**Margarito ORTEGA, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 3–91–251–CR.**

Court of Appeals of Texas,
Austin.

July 7, 1993.

Motion to Publish Granted Aug. 11, 1993.

Keith S. Hampton, Austin, for appellant.

Ronald Earle, Dist. Atty., William G. Reid, Asst. Dist. Atty., Austin, for appellee.

Before POWERS, KIDD and ONION,* JJ.

---

* Before John F. Onion, Jr., Presiding Judge (retired), Court of Criminal Appeals, sitting by assignment. *See* Tex.Gov't Code Ann. § 74.003(b) (West 1988).

ONION, Justice.

This appeal is taken from an order revoking probation that had been granted following appellant's conviction for bribery. Following revocation, the trial court assessed appellant's punishment at ten years' imprisonment.

Appellant advances ten points of error. Appellant sets forth these points as follows:

1. The trial court abused its discretion in finding that appellant had failed to attend Alcoholics Anonymous meetings because the evidence was insufficient.

2. The trial court abused its discretion in denying appellant's special plea of collateral estoppel because the allegations in the State's motion to revoke probation had already been adjudicated in a previous judicial·proceeding.

3. The trial court abused its discretion in overruling appellant's motion to continue probationer on probation because the trial court was mandatorily required to continue appellant on probation pursuant to Article 42.08 of the Code of Criminal Procedure.

4. The evidence was insufficient to revoke appellant's probation and the trial court should have granted appellant's motion for directed verdict.

5. The trial court denied appellant due process and due course of law in continuing the revocation hearing for nine months, then revoking him when he raised an objection.

6. The trial court denied appellant due process and due course of law in revoking appellant for failure to make probationary payments.

7. Article 42.12, § 24(b) of the Code of Criminal Procedure is unconstitutional because it conflicts with *Bearden v. Georgia*, 461 U.S. 660, 103 S.Ct. 2064, 76 L.Ed.2d 221 (1983).

8. The trial court denied appellant due process and due course of law in revoking appellant for failure to finish community restitution service.

9. The trial court denied appellant due process and due course of law in revoking appellant for failure to submit a urine sample.

10. Appellant has been denied due process and due course of law because he did not have a neutral or detached judge.

On November 6, 1989, appellant entered guilty pleas before the trial court to indictments charging bribery, aggravated perjury, and tampering with a governmental record. He was granted ten years' probation in each case subject to certain conditions. A motion to revoke probation was filed on August 16, 1990. After several re-settings, the revocation motion was called again on December 6, 1990. Without a hearing, the conditions of probation were modified and appellant was continued on probation. On May 3, 1991, an amended motion to revoke probation was filed. Appellant entered a plea of "true." The trial court revoked probation in the bribery case on May 3, 1991, and granted "shock probation." [1] Appellant filed a motion for new trial and a brief pointing out that bribery was not an offense for which appellant could be accorded "shock probation," Tex. Code Crim.Proc.Ann. art. 42.12, § 6(3) (West Supp.1993), and that appellant could raise the question of a void sentence at any time. *See Heath v. State*, 817 S.W.2d 335 (Tex.Crim. App.1991). The trial court set aside the order of revocation and granted appellant a new hearing.

On May 31, 1991, appellant entered a plea of "not true" to the amended motion to revoke probation. At the conclusion of the hearing, the trial court revoked probation. In its formal judgment, the trial court found that appellant had violated his probationary conditions as follows:

Has not paid probation supervision fees and is delinquent $386.25; Has not paid fine and court costs and is delinquent $106.25; Failure to submit urine specimen on April 20, 1990; Failure to obtain G.E.D.; Failure to attend Alcoholics Anon-

---

1. It appears from the record that appellant was continued on probation in the aggravated perjury and tampering with a governmental record cases.

ymous Meetings; Failure to complete 300 hours of community service restitution.

It is these findings that appellant challenges in his various points of error.

■ A proceeding to revoke probation portends a possible deprivation of liberty, and as such, the application of appropriate due process of law is constitutionally required. *Caddell v. State,* 605 S.W.2d 275, 277 (Tex.Crim.App.1980); *see also Gagnon v. Scarpelli,* 411 U.S. 778, 93 S.Ct. 1756, 36 L.Ed.2d 656 (1973). The burden of proof is upon the State to show by a preponderance of the evidence that a probationer has violated the conditions of probation as alleged in the motion to revoke probation. *Jenkins v. State,* 740 S.W.2d 435, 437 (Tex.Crim.App. 1983). That evidence must create a reasonable belief that the probationer has violated a condition of probation as alleged by the State. *Id.* When the State has sustained its burden, the decision whether to revoke probation is within the discretion of the trial court. *Flournoy v. State,* 589 S.W.2d 705, 707 (Tex.Crim.App.1979); *Galvan v. State,* 846 S.W.2d 161, 162 (Tex.App.—Houston [1st Dist.] 1993, no pet.). When the State does not meet its burden of proof, the trial court abuses its discretion by revoking probation and deprives the probationer of due process. *Cardona v. State,* 665 S.W.2d 492, 493 (Tex. Crim.App.1984). In a revocation proceeding, the trial court is the trier of fact and the judge of the credibility of the witnesses and the weight of the testimony. *Garrett v. State,* 619 S.W.2d 172, 174 (Tex.Crim.App. 1981). The appellate court reviews the evidence in the light most favorable to the trial court's judgment. *Galvan,* 846 S.W.2d at 162.

With this background, we turn to the record in the instant case. At the outset, the State concedes that the record of the revocation hearing does not show that the trial court made findings on the alleged failure to obtain a GED or the alleged failure to attend Alcoholics Anonymous (A.A.) meetings. The State urges that the formal judgment be reformed to delete any finding as to the failure to obtain a GED or the failure to attend A.A. meetings. We agree with the State. Moreover, the probation officer re-

canted his earlier testimony and admitted that the probation office's records did show that appellant had attended A.A. meetings as required. Further, the amended conditions of probation reflect: "(24) Obtain GED within ____ year(s)." Thus, no time limit within the probation period was placed on appellant in which to obtain his GED.

Next, we shall consider the court's finding that appellant failed to complete 300 hours of community service restitution. In both the original and amended conditions of probation, appellant was required to "Complete 300 hours of Community Service Restitution *at a place designated by your probation officer.* No less than 5 (five) hours a week" (emphasis added).

■ Courts of the State of Texas having original jurisdiction of criminal actions have the power, after conviction, to suspend the imposition or execution of sentence and to place a defendant on probation and to reimpose such sentence under such conditions as the Legislature may prescribe. *See* Tex. Const. art. IV, § 11A. This authority represents a limited grant of clemency *to the courts* by the people. *McNew v. State,* 608 S.W.2d 166, 170 (Tex.Crim.App.1978). Article IV, section 11A of the state constitution is not self-enacting and article 42.12 of the Texas Code of Criminal Procedure is one of the enabling acts. Tex.Code Crim.Proc.Ann. art. 42.12 (West Supp.1993); *Burson v. State,* 511 S.W.2d 948, 950 (Tex.Crim.App.1974). Section 11(a) of article 42.12 provides that the "*court* having jurisdiction of the case *shall* determine the terms and conditions of probation and may, at any time, during the period of probation alter or modify the conditions." Tex.Code Crim.Proc.Ann. art. 42.12, § 11(a) (West Supp.1993) (emphasis added). Section 11(a)(10) of the statute provides that one of the probationary conditions that may be imposed is "Participate, *for a time specified by the court* in any community-based program, including a community-service work program *designated by the court.*" *Id.* (emphasis added). Further, sections 17(a) and (b)(1) of the Adult Probation Law provide in part:

(a) If the court places a defendant on probation, the court may require, as a condition of the probation, that the defen-

dant work a specified number of hours at a community service project or projects *for an organization or organizations named in the court's order....*

(b) The amount of community service work *ordered by the court:*

(1) may not exceed 1,000 hours and may not be less than 320 hours for an offense classified as a first degree felony.

Tex.Code Crim.Proc.Ann. art. 42.12, § 17(a), (b)(1) (West Supp.1993) (emphasis added).

▬▬ The probationary condition in question requires the appellant to perform 300 hours of community service restitution "at a place designated by your probation officer." In addition to the obvious question of the validity of the trial court's delegation of authority to the probation officer,[2] we observe that the probationary condition does not designate a community-service program nor does it name the organization or organizations for which appellant may have to perform 300 hours of work on a community service project.

We conclude that neither the original nor amended condition of probation as to community service restitution was a valid condition of probation upon which the revocation of probation may be based. *Cf. Tovar v. State,* 777 S.W.2d 481, 496 (Tex.App.—Corpus Christi 1989, pet. ref'd).

▬▬ Next, we turn to the trial court's finding that appellant failed to submit a urine sample on April 20, 1990, some eleven months prior to revocation. The condition of probation in question was "submit a urine specimen at the direction of the Probation Officer, daily if ordered."

▬▬ The duty and responsibility for determining conditions of probation rest squarely upon the judiciary. The trial court may not delegate this authority to the probation officer or anyone else. *DeGay,* 741 S.W.2d at 449; *McDonald v. State,* 442 S.W.2d 386, 387 (Tex.Crim.App.1969); *Johnson v. State,* 672 S.W.2d 621, 623 (Tex.App.—Corpus Christi 1984, no pet.). The condition of probation as drafted permits the probation officer to decide *if* and *when* and *where* a urine specimen is to be submitted. The condition constitutes an improper delegation of authority. Moreover, the probationary condition appears to be vague and indefinite so that it cannot be enforced. "Report to the probation officer as directed" has been held to be so vague and indefinite that it cannot be enforced as it does not inform the probationer with sufficient certainty of what he is to do. *See Harris v. State,* 608 S.W.2d 229, 230 (Tex.Crim.App.1980); *Curtis v. State,* 548 S.W.2d 57, 58 (Tex.Crim.App.1977); *cf. Cardona v. State,* 665 S.W.2d 492 (Tex.Crim.App.1984).

▬▬ Probation Officer Jerry Gray testified that he assumed supervision of appellant's probation in September 1990. From the probation records, Gray testified that a "request" was made on April 19, 1990, for appellant to submit a urine specimen on April 20, 1990, but the returned lab report indicated that appellant had failed to appear that day. Gray did not identify who made the "request" on April 19, 1990, or how that "request" was communicated to appellant. The evidence does not reflect whether appellant was informed in person of the "request" by telephone or by mail, or if in fact he was notified at all. Appellant testified that he knew nothing about any "request" to submit a urine specimen on April 20, 1990, and that any failure to submit a specimen on the date in question was "a mistake." Appellant re-

---

**2.** The relationship between the trial court and the probationer is contractual in nature. *DeGay v. State,* 741 S.W.2d 445, 449 (Tex.Crim.App. 1987). Normally, the trial court cannot delegate its duty and responsibility for determining the conditions of probation to the probation officer or anyone else. *Id.; Jones v. State,* 571 S.W.2d 191, 193 (Tex.Crim.App.1978); *Cox v. State,* 445 S.W.2d 200, 202 (Tex.Crim.App.1969) (Onion, J., concurring). We are aware of the provisions of section 10(d) of the Adult Probation Law which permit the court that has placed a defendant on

probation to authorize the probation officer "to modify the conditions of probation for the *limited purpose* of transferring the probationer to different programs within the probation program." Tex.Code Crim.Proc.Ann. art. 42.12, § 10(d) (West Supp.1993) (emphasis added). We do not construe this provision of the statute to authorize the probationary condition at issue here. Further, we reject the reasoning in *Lemon v. State,* 837 S.W.2d 163, 169–171 (Tex.App.—El Paso 1992, pet. granted).

lated that he submitted many specimens and that he would give a urine specimen at any time he was directed to do so. Gray testified that appellant submitted "quite a few" urine specimens on a weekly basis and that none of the tests were positive. We conclude that the trial court abused its discretion in revoking probation in the instant case on the basis of the probationary condition in question.

■ We now address the trial court's findings that appellant had not paid his probationary supervisory fee in the amount of $386.25 and was delinquent in the sum of $106.25 in paying his fine and court costs.

When appellant was placed on probation in November 1989, he was required by his probationary conditions to pay a fine of $1,000.00 and court costs in the amount of $107.50 for a total amount of $1,107.50 to be paid at $50.00 per month. In addition, appellant was required to pay $40.00 per month as a probationary supervisory fee. Appellant was also required to pay $95.00 in restitution and $10.00 to the Crime Stoppers Program. When the probationary conditions were amended in December 1990, the conditions described above remained the same. The amended motion to revoke probation filed May 3, 1991, upon which the revocation was based, alleged that appellant was delinquent in paying probation supervision fees in the amount of $386.25 and delinquent in the sum of $106.25 in paying his fine and court costs.

Jerry Gray, the probation officer who had been supervising appellant since September 1990, testified that appellant was delinquent in paying his probationary supervisory fees, court costs, and a fine as alleged in the amended motion to revoke probation. Gray reported that his records showed that there had been a $40.00 payment on May 8, 1991, and that the last payment before that was in October 1990. When asked on cross-examination if his records could be wrong, the probation officer responded, "I suppose." [3] On re-direct examination, the officer testified that he did not have any reason to believe his records were incorrect as to the amount of payments. The State offered little or no

evidence to show appellant's employment record or his income in order to demonstrate that the failure to pay was intentional or willful.

The court's records of which the trial court took judicial notice reflect that shortly after appellant successfully completed an Intensive Supervision Project, he was granted a travel permit to Hays and Williamson counties from July 31, 1990, until August 17, 1990, to apply for employment. During this period, the original revocation motion was filed on August 16, 1990, alleging, inter alia, delinquency in paying probationary fees, costs, and the fine imposed. Appellant was arrested on September 6, 1990, and remained in jail until September 17, 1990. On September 11, 1990, while confined in jail, appellant was appointed counsel by the court, who apparently obtained appellant's release on a personal bond. After court settings on September 13 and October 4, 1990, appellant filed on November 2, 1990, a motion to modify the conditions of probation and reduce the payments required. He attached to the motion an "Affidavit of Significant Financial Hardship." On December 6, 1990, appellant's counsel informed the trial court that appellant's employment at Kwik Wash, his last place of employment, had been terminated because the store had closed. On that day the trial court, without a hearing on the revocation motion, modified the conditions of probation to require appellant to enroll in the Pre-employment Program and to remain in the program until officially discharged. On January 17, 1991, appellant informed the trial court that he had been sent to three or four potential jobs every day but had not been given an interview. He told the trial court, however, that he had obtained a construction job that was to start the next day. The amended revocation motion was filed on May 3, 1991. Appellant was arrested on that date and was in jail at the time of the revocation hearing.

In his testimony at the revocation hearing, appellant stated that the Pre-employment Program had worked and that he had obtained a job with the Laguna Construction

---

**3.** The probation officer recanted his testimony that his records failed to show that appellant had attended A.A. meetings, and he questioned the accuracy of his records as to the hours of community service restitution.

Company. His rate of pay was not established.[4] Appellant testified that after a month or so "we did have no work" because of the rain. After being informed that the construction job was to be terminated in about two weeks, appellant secured employment with a H.E.B. grocery store at $5.00 per hour. The date this employment commenced is not reflected by the record. Appellant told the prosecutor that his income from the H.E.B. store was about $600.00 a month, which continued until his incarceration on May 3, 1991. Appellant testified that he supported seven people including himself, a non-working wife and five children. Appellant received food stamps to assist in paying for food, but his housing assistance had been terminated because of his H.E.B. employment. Appellant stated that he had to pay rent and his utilities bill which was almost one hundred dollars. In addition, there were transportation costs since his 1984 Ford van had broken down. Appellant related that there were costs to be paid in the other two cases in which he had been placed on probation. Appellant also stated that there were costs for the school clothes for the five children. One of appellant's conditions of probation was that he support his dependents. Appellant related that he tried to find the hours to complete his GED, but an instructor told him he needed glasses if he was going to complete the courses.

When the probationer raises the defense of inability to pay compensation to appointed counsel, probation fees, court costs, restitution, or reparations as required by probationary conditions, the probationer must prove the affirmative defense by a preponderance of the evidence. Tex.Code Crim. Proc.Ann. art. 42.12, § 24(b) (West Supp. 1993);[5] *Stanfield v. State*, 718 S.W.2d 734, 738 (Tex.Crim.App.1986). The State has the burden to prove that the probationer intentionally failed to pay fees and costs. *Smith v. State*, 790 S.W.2d 366, 367 (Tex.App.—

Houston [1st Dist.] 1990, pet. ref'd). The State has this burden even if the probationer fails to raise the issue of inability to pay as an affirmative defense. *Washington v. State*, 731 S.W.2d 648, 650 (Tex.App.—Houston [1st Dist.] 1987, no pet.). Moreover, with regard to a fine, the State has the burden under the Fourteenth Amendment to show that the probationer willfully refused to pay or failed to make bona fide efforts to legally acquire the resources to pay the fine. *See Bearden v. Georgia*, 461 U.S. 660, 103 S.Ct. 2064, 76 L.Ed.2d 221 (1983).

There was no testimony offered by the State tending to show that appellant willfully failed or refused to work at suitable employment or failed to support his dependents.[6] The State did not prove that appellant intentionally or willfully refused to make the payments he was ordered to make as conditions of probation or failed to make bona fide efforts to legally acquire the resources to make the payments. The State proved that appellant made some payments, but was delinquent in certain amounts regarding his payments. It was the State's burden, however, to prove by a preponderance of the evidence that appellant's failure to make these payments was intentional. This it did not do. The trial court abused its discretion in revoking probation on this basis. *See Smith v. State*, 790 S.W.2d 366, 367–68 (Tex.App.—Houston [1st Dist.] 1990, pet. ref'd); *Aranda v. State*, 684 S.W.2d 794, 799 (Tex.App.—Fort Worth 1985, pet. ref'd). *Cf. Reyes v. State*, 752 S.W.2d 591, 592–93 (Tex.App.—Corpus Christi 1987, no pet.).

We sustain appellant's points of error one, four, six, eight and nine. In view of our disposition of these points, we do not reach appellant's other contentions. The order revoking probation is reversed and the cause remanded to the trial court.

---

4. Appellant's previously filed affidavit indicated that his net pay at Kwik Wash was $104.70 per week.

5. The payment of a fine as a condition of probation is not listed in section 24(b) of article 42.12.

6. These were conditions of probation that were not allegedly violated. That appellant was not in violation of those conditions is a factor to be considered on the issue of whether appellant intentionally failed to make the payments required.