TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN






NO. 03-01-00331-CR






Amy Jeanine Armstrong, Appellant



v.



The State of Texas, Appellee







FROM THE DISTRICT COURT OF BELL COUNTY, 27TH JUDICIAL DISTRICT


NO. 44,179, HONORABLE C. W. DUNCAN, JR., JUDGE PRESIDING





 Appellant Amy Jeanine Armstrong appeals from the district court's order revoking
her probation and ordering her confined to the Texas Department of Criminal Justice: Institutional
Division for five years. We will reverse and remand.


Summary of the Evidence 

 Texas Highway Patrol Officer Doug Childs testified that on March 24, 2000, he
reported to the scene of a car accident in Hill County. When Childs arrived, Armstrong was lying
on the ground being attended by a medic. Childs spoke to some of the deputies who had first arrived
on the scene and learned that Armstrong had been driving and that Armstrong's three children and
sister-in-law had been passengers in her car. Armstrong, her passengers, and the driver of the other
car involved in the accident were eventually transported to the hospital by ambulance.

 At the scene, Childs observed that Armstrong's sister-in-law, Felicia, was holding a
purple nylon bag. Childs' attention was drawn to the bag because one of the deputies told him that
Armstrong "was more interested in locating this purple bag . . . than worrying about the children." 
After Armstrong and the others were taken away by ambulance, Childs arranged to have the cars
towed and then went to the emergency room, where he saw Felicia, still in possession of the bag,
standing or sitting near Armstrong. Childs asked Felicia if he could look in the bag, which Felicia
said contained clothes. Felicia gave Childs consent to search the bag, and Childs found "a paper
sack that was sitting down amongst the children[']s clothes in the bag." The paper sack contained
a substance Childs believed to be cocaine. When Childs discovered the cocaine, Armstrong
"immediately asked how that got in her bag." Felicia also stated she did not know how the drugs got
into the bag. Childs did not arrest Armstrong or Felicia at the hospital. Instead he confiscated the
sack, believing it contained a controlled substance, and had it tested. The tests showed the sack
contained cocaine, and Childs prepared arrest affidavits and arrest warrants; Armstrong and Felicia
later turned themselves in and were arrested for possession of cocaine on May 3, 2000. (1)

 Childs never saw Armstrong holding the bag. He asked for and received consent to
search the bag from Felicia, not Armstrong. Childs said when he found the paper sack, he asked
Felicia to open it, but instead she handed the bag to Childs, who opened it himself. Before he
opened the bag, Felicia told him "it was pants," but Childs assumed it contained contraband. Childs
did not suspect it contained a weapon. Childs did not ask Armstrong for permission to search the
bag. Childs said he decided to examine the bag because of the report that Armstrong was "more
worried about what's in the bag than her kids at the accident scene."

 Shannon Adams, transfer supervisor for the Bell County Community Supervision and
Corrections Department ["CSCD"], testified that she assumed supervision of Armstrong's case when
the State's motion to revoke was filed. Adams brought and the district court admitted into evidence
Bell County CSCD's records related to Armstrong's supervision.

 In 1994, Armstrong pleaded guilty to possession of cocaine and was given a ten-year
probated sentence. Initially, Armstrong was supervised by Bell County CSCD and lived in Bell
County. The terms of her probation required her to report regularly to her community supervision
officer ["CSO"], remain in Bell County unless permitted in writing to leave, pay monthly restitution
and supervisory fees, and report to her CSO within forty-eight hours any change of address, change
of job, or arrest. Between 1994 and late 1996, she received numerous travel permits to allow her to
visit her husband who was in federal custody. When Armstrong's husband was released, she
requested permission to move to Dallas. Adams's records include a letter dated November 19, 1996,
from Bell County CSCD to Dallas County CSCD stating Armstrong "has been given permission to
proceed to your County and is to contact your office at your request for instructions on time and
location for reporting to your department." The letter lists a proposed address in Dallas and includes
in bold type the notation, "OUT OF STATE TRAVEL RESTRICTION WITH THIS
DEPARTMENT'S PERMISSION ONLY." Adams testified that Judge Trudo signed an order on
November 26, 1996, transferring Armstrong's residence from Bell County to Dallas County. Adams
agreed that the order "does not state that [Armstrong] must remain in Dallas County, Texas, unless
she gets permission of the Court," but instead states that "she must get permission of the Court if she
decides to change her residency from Dallas County." The record also includes a letter dated
February 25, 1997, from Dallas County CSCD to Bell County CSCD stating that Armstrong's
supervision "has been ACCEPTED as of above date," and that Armstrong was assigned to the East
Office of Dallas County CSCD.

 Adams testified that since being supervised in Dallas County, Armstrong had been
tested for drugs thirteen times, and all but one of those tests were negative; she tested positive for
cocaine on May 11, 1998. After testing positive, Armstrong attended and completed a drug
education program. She also earned her G.E.D. on July 19, 1999. Adams's records include a report
by Armstrong's Dallas County CSO Teresa Taylor-Dawes dated April 13, 1999, in which Taylor-Dawes said Armstrong "missed one appointment with this CSO on 7-8-98 but phoned on 7-9-98 and
was rescheduled for 7-29-98 in which [sic] she kept. In general, Ms. Armstrong reports as directed
and has not had a problem with reporting." Adams said on July 8, 1998, Armstrong "reported by
mail to the Bell-Lampasas County CSCD" and made her required $65 payment. In May 2000,
Taylor-Dawes filed a report stating Armstrong had a good attitude and "the only trouble this officer
has had with Ms. Armstrong was with employment and the one dirty [drug test] that she had in
1998."

 Adams said she did not learn about Armstrong's arrest until May 15, 2000, well
beyond forty-eight hours of Armstrong's May 3 arrest, when Bell County CSCD received a "call
from Dallas [County] CSO Taylor-Dawes advising [Armstrong] had been indicted for possession
of a controlled substance with intent to deliver." Adams's records indicate that she called Taylor-Dawes on June 5, 2000, to ask if Armstrong had received permission to leave Dallas County on
March 24, 2000. Taylor-Dawes said she had not given any such permission.

 On June 6, Adams filed a report recommending that, "[a]lthough Ms. Armstrong has
been under supervision since 1994 with few violations," her probation be revoked because the
charged offense was similar to the original offense and it did not appear that she would abide by her
probation conditions. The State filed a motion to revoke Armstrong's probation on June 20, 2000,
alleging Armstrong had violated the terms of her probation by (1) intentionally or knowingly
possessing cocaine with an intent to deliver, (2) failing to report to her CSO on July 8, 1998, (3)
failing to remain within Bell County and failing to obtain permission to leave Dallas County on
March 24, 2000, and (4) failing to report her May 3 arrest to her CSO within forty-eight hours. After
hearing the State's evidence, the district court found the first and fourth allegations were true and
the second and third allegations were not true. (2)


Standard of Review

 In a revocation hearing, the State must prove by a preponderance of the evidence that
a defendant violated the terms of her probation. Moreno v. State, 22 S.W.3d 482, 488 (Tex. Crim.
App. 1999) (en banc); Cobb v. State, 851 S.W.2d 871, 873 (Tex. Crim. App. 1993) (en banc); Willis
v. State, 2 S.W.3d 397, 399 (Tex. App.--Austin 1999, no pet.). The State's burden of proof is
satisfied if the greater weight of credible evidence creates a reasonable belief that the defendant
violated a condition of her probation as alleged by the State. Solis v. State, 589 S.W.2d 444, 447
(Tex. Crim. App. 1979); Kulhanek v. State, 587 S.W.2d 424, 426 (Tex. Crim. App. 1979); Ortega
v. State, 860 S.W.2d 561, 564 (Tex. App.--Austin 1993, no pet.). A trial court's decision to revoke
probation is reviewed for an abuse of discretion. Cardona v. State, 665 S.W.2d 492, 493 (Tex. Crim.
App. 1984) (en banc); Willis, 2 S.W.3d at 398-99; Ortega, 860 S.W.2d at 564. A trial court abuses
its discretion if the decision is so clearly wrong as to lie outside the zone within which reasonable
persons might disagree. Cantu v. State, 842 S.W.2d 667, 682 (Tex. Crim. App. 1992) (en banc);
Willis, 2 S.W.3d at 399. We view the evidence presented in a revocation proceeding in the light
most favorable to the trial court's ruling. Garrett v. State, 619 S.W.2d 172, 174 (Tex. Crim. App.
1981); Willis, 2 S.W.3d at 399; Ortega, 860 S.W.2d at 564. As the trier of fact, it is left to the trial
court to judge the credibility of witnesses and the weight to be given their testimony. Garrett, 619
S.W.2d at 174; Ortega, 860 S.W.2d at 564.

 To prove drug possession, the State must show (1) a defendant exercised care,
custody, control, or management over the drugs, and (2) that she knew she possessed a controlled
substance. Brown v. State, 911 S.W.2d 744, 747 (Tex. Crim. App. 1995) (en banc); Martinets v.
State, 884 S.W.2d 185, 187 (Tex. App.--Austin 1994, no pet.). When a defendant is not in
exclusive possession or control of the place where the drugs are found, the State must affirmatively
link the defendant with the drugs. Brown, 911 S.W.2d at 747-48; Hackleman v. State, 919 S.W.2d
440, 444 (Tex. App.--Austin 1996, pet. ref'd, untimely filed); Martinets, 884 S.W.2d at 187. More
than the defendant's mere presence near the drugs is required, especially when several people are
present or in possession of the place where the drugs are found. Villarreal v. State, 865 S.W.2d 501,
503 (Tex. App.--Corpus Christi 1993, pet. ref'd); Estrada v. State, 643 S.W.2d 753, 756 (Tex.
App.--San Antonio 1982, no pet.).

 The State's evidence need not exclude every reasonable hypothesis other than the
defendant's guilt, but it must show facts and circumstances that, viewed in the totality of the
circumstances, indicate the defendant's knowledge and control over the drugs. See Brown, 911
S.W.2d at 748; Hyett v. State, 58 S.W.3d 826, 830 (Tex. App.--Houston [14th Dist.] 2001, no pet.);
Howard v. State, 972 S.W.2d 121, 124 (Tex. App.--Austin 1998, no pet.). Affirmative links
between a defendant and illegal drugs may include: the defendant's presence when the drugs are
found; whether the drugs or other contraband were in plain view; the defendant's proximity to and
the accessibility of the drugs; whether the defendant was under the influence of drugs when the drugs
were found; whether the defendant possessed other contraband or drug paraphernalia; whether the
defendant made incriminating statements or furtive gestures or tried to flee; whether there was any
noticeable drug odor; whether the defendant had the right to possess the place where the drugs were
found; and whether that place was enclosed. See Hyett, 58 S.W.3d at 830; Martinets, 884 S.W.2d
at 188; Villarreal, 865 S.W.2d at 503-04.


Discussion

 The district court found the evidence sufficient to sustain the State's allegations that
Armstrong: (1) knowingly and intentionally possessed cocaine, and (2) failed to report her arrest
within forty-eight hours. The State therefore had the burden of proving by a preponderance of the
evidence at least one of those grounds. See Cobb, 851 S.W.2d at 873; Willis, 2 S.W.3d at 399.

 Armstrong does not attack the credibility of the State's witnesses; she attacks the
sufficiency of the evidence supporting the district court's findings. The only evidence linking
Armstrong to the drugs were (1) an unidentified deputy's statement to Childs alleging that before
Childs arrived on the scene Armstrong "was more interested in locating this purple bag . . . than
worrying about the children," and (2) Armstrong's statement at the hospital that the bag was hers. 
Childs never saw Armstrong in possession of the bag, did not see her make any furtive gestures
toward it, and did not find any other contraband on or near Armstrong. Childs did not testify as to
how much time elapsed between when the accident occurred, when police officers initially arrived
at the scene, and when he arrived at the scene, nor did he testify as to how much time elapsed
between when Armstrong was transported to the hospital and when he arrived there and searched
the bag. Childs did not testify that Armstrong did anything in his presence to indicate she was
concerned more about the bag than her children. The drugs were in a paper sack, inside the purple
bag, under clothing, and not in plain view. There was no evidence of any kind of odor, and Childs
did not testify that Armstrong appeared to be under the influence of any illicit drug. Childs testified
that when he discovered the drugs, Armstrong "immediately asked how that got into her bag," a
statement that, rather than being incriminating, could indicate she was unaware of the presence of
the drugs. Childs did not testify that Armstrong appeared to know that the paper sack contained an
illegal substance. We do not know whether Armstrong and Felicia were transported to the hospital
in the same ambulance, what, if anything, Felicia did while Armstrong was lying on the ground being
treated by a medic, or whether anyone else had access to the bag at the scene of the accident or at the
hospital.

 Although the State had the burden of showing Armstrong knowingly and intentionally
exercised care, custody, control, or management over the drugs found in the purple bag, it was not
obligated to prove this beyond a reasonable doubt or to exclude all reasonable alternative hypotheses
other than Armstrong's guilt. See Brown, 911 S.W.2d at 748; Cobb, 851 S.W.2d at 873; Martinets,
884 S.W.2d at 187. However, the State was obligated to affirmatively link Armstrong to the drugs
by a preponderance of the evidence. See Brown, 911 S.W.2d at 748; Cobb, 851 S.W.2d at 873. We
do not believe the State carried its burden of producing evidence that could create the reasonable
belief that Armstrong both exercised care, custody, or control over the drugs and knew she possessed
a controlled substance. See Brown, 911 S.W.2d at 747; Solis, 589 S.W.2d at 447; Kulhanek, 587
S.W.2d at 426. The affirmative links are too weak to support the district court's finding that
Armstrong violated her probation by intentionally and knowingly possessing the drugs found in the
purple bag.

 The only other ground on which the district court could have revoked Armstrong's
probation was the finding that she failed to report her May 3 arrest within forty-eight hours. 

 The State's evidence consisted of Shannon Adams's statements that her office did not
learn of Armstrong's arrest until it was so notified by the Dallas County CSCD on May 15. 
However, more than three years before Armstrong's May 3 arrest, the supervision of her probation
was transferred from Bell County to Dallas County, where she was supervised by CSO Taylor-Dawes. Adams did not testify or present any evidence as to when Armstrong notified Taylor-Dawes
or the Dallas County CSCD. The State argues that its evidence that Armstrong made reports and
payments to the Bell County CSCD, "coupled with the absence of evidence that [Armstrong]
reported to any other supervision officer in Dallas or Bell County," is sufficient to show that
Armstrong did not timely report her arrest. However, Armstrong was not obligated to prove that she
did make a timely report; instead, the State had to show by a preponderance of the evidence that she
did not make such a report, thus violating her probation. See Cobb, 851 S.W.2d at 873; Willis, 2
S.W.3d at 399. Based on the record before us, we hold that the State did not prove by a
preponderance of the evidence that Armstrong failed to timely report her arrest.


Conclusion

 Having held that the State did not prove by a preponderance of the evidence that
Armstrong intentionally and knowingly possessed cocaine or failed to timely report her arrest, we
hold the district court abused its discretion in revoking Armstrong's probation. We reverse the
district court's order and remand the cause for further proceedings.



 

 David Puryear, Justice

Before Chief Justice Aboussie, Justices B. A. Smith and Puryear

Reversed and Remanded

Filed: April 11, 2002

Publish
1. Armstrong's possession charges were still pending in Hill County when this hearing was held. 
Childs did not know whether Felicia had pleaded guilty to drug possession.
2. The State does not attack the district court's finding that the evidence was insufficient to revoke
on the second and third alleged grounds. Although Armstrong missed an appointment on July 8,
1998, Adams's records indicate Armstrong called the next day, rescheduled, and kept the
rescheduled appointment. As for Armstrong's alleged failure to remain within Bell County or to get
permission to leave Dallas County, (1) Armstrong's residence and supervision was transferred to
Dallas County, thus she was no longer restricted from leaving Bell County, and (2) the documents
transferring Armstrong's supervision to Dallas County appear to contain language that could be
interpreted to limit her travel not to within Dallas County but to within the State of Texas.