ACCEPTED
03-14-00682-CR
5949405
THIRD COURT OF APPEALS
AUSTIN, TEXAS
7/6/2015 4:38:32 PM
JEFFREY D. KYLE
CLERK

No. 03-14-00682-CR

IN THE COURT OF APPEALS

FILED IN
3rd COURT OF APPEALS
AUSTIN, TEXAS

FOR THE THIRD JUDICIAL DISTRICT

7/6/2015 4:38:32 PM

JEFFREY D. KYLE
Clerk

**Peter Ezebunwa**
**vs.**
**State of Texas**

APPELLANT'S BRIEF

On appeal from Cause Number D-1-DC-10-206948
In the 427th District Court
Travis County, Texas
Honorable Jim Coronado, Presiding

Amber Vazquez Bode
Attorney at Law
State Bar No. 24039225
1004 West Ave.
Austin, Texas 78701
(512) 220-8507 (office)
(512) 917-3676 (cell)
(512) 480-0760 (fax)

*ORAL ARGUMENT*
*RESPECTFULLY REQUESTED*

IDENTITIES OF PARTIES COUNSEL

Pursuant to the provisions of Rule 38.1(a), Texas Rules of Appellate Procedure, a complete list of all parties to this action and counsel are as follows:

Parties:                              Mr. Peter  Ezebunwa, Appellant

                                      State of Texas, Appellee

Attorney for the Appellant:           Amber Vazquez Bode
                                      1004 West Ave.
                                      Austin, Texas 78756

Attorneys for the State:              Appellate Division
                                      Rosemary Lehmberg
                                      Travis County District Attorney's Office
                                      509 West 11th Street
                                      Austin, Texas 78701

# TABLE OF CONTENTS

IDENTITIES OF PARTIES AND COUNSEL ......... ii

TABLE OF CONTENTS........................................ iii

INDEX OF AUTHORITIES.................................... iv

STATEMENT OF THE CASE .................................1

ISSUES PRESENTED .................................... ……..3

SUMMARY OF FACTS ...........................................4

SUMMARY OF THE ARGUMENT ........................10

POINT OF ERROR: THE EVIDENCE IS INSUFFICENT TO SUPPORT THE TRIAL COURT'S FINDING THAT APPELLANT HAD VIOLATED THE TERM ON HIS COMMUNITY SUPERVISION, SPECIFCALLY, THAT EVIDENCE SUPPORTED A FINDING THAT APPELLANT HAD "CARE, CUSTODY OR CONTROL" OF COCAINE…10

 PRAYER FOR RELIEF...........................................18

 CERTIFICATE OF SERVICE ...............................20

CERTIFICATE OF COMPLIANCE ........................21

# INDEX OF AUTHORITIES

*Armstrong v. State,* 82 S.W. 3d 444 (Tex. App.-Austin 2002)……………15

*Brown v. State,* 911 S.W.2d 744 (Tex. Crim. App. 1995) (en banc)……… 11

*Burks v. United States*, 437 U.S. 1, 98 S. Ct. 2141, 57 L.Ed.2d 1 (1978) ....13

*Butler v. State*, 769 S. W. 2d 234 (Tex. Crim. App. 1989) …………..……12

*Cantu v. State*, 842 S. W. 2d 667 (Tex. Crim. App. 1992) (en banc)...........11

*Cardona v. State,* 665 S. W.2d 492 (Tex. Crim. App. 1984)……….............10

*Cobb v. State*, 851 S.W.2d 871 (Tex. Crim. App. 1993) …………..………10

*Deshong v. State*, 625 S. W. 2d 327 (Tex. Crim. App. [Panel Op.] 1981) ..12

*Dickey v. State*, 693 S. W. 2d 386 (Tex. Crim. App. 1984) ……..............……12

*Dubry v. State*, 582 S. W. 2d 841 (Tex. Crim. App. 1979)… ……………..13

*Duff v. State*, 546 S.W.2d 283 (Tex. Cr. App. 1977).……………....……13

*Easley v. State*, 564 S. W. 2d 742 (Tex. Cr. App. 1978).……………...…13

*Estrada v. State,* 643 S.W.2d 753 (Tex.App.-San Antonio 1982, no pet.)...16

*Garrett v. State*, 619 S. W. 2d 172 (Tex.Crim.App.1981).……..………..11

*Greene v. Massey*, 437 U.S. 19, 98 S.Ct. 2151, 57 L.Ed. 2d 15 (1978).. ….13

*Hackleman v. State,* 919 S.W.2d 440 (Tex.App.-Austin 1996, pet. ref'd, untimely filed)…………………………………………………………...15

*Howard v. State,* 972 S.W.2d 121 (Tex.App.-Austin 1998, no pet.)…...……16

*Hyett v. State,* 58 S.W.3d 826 (Tex.App.-Houston [14th Dist.] 2001, no pet.)…………………………………………………………………16

*Kulhanek v. State*, 587 S. W. 2d 424 (Tex. Crim. App. 1979).……………11

*Martinets v. State,* 884S. W. 2d 185 (Tex. App.-Austin 1994, no pet.) ...…11

*Meeks v. State*, 692 S. W. 2d 504 (Tex. Crim. App. 1985)……...…..……12

*Moreno v. State*, 22 S. W. 3d 482 (Tex. Crim. App. 1999) (en banc)……...10

*Ortega v. State*, 860 S. W. 2d 561 (Tex. App.-Austin 1993, no pet.)……...11

*Reyes v. State*, 575 S.W.2d 38 (Tex.Cr.App. 1979)..……………...…….14

*Rickels v. State*, 202 S.W. 3d 759 (Tex. Crim. App. 2006)………………...10

*Sinor v. State*, 612 S.W.2d 591 (Tex. Crim. App. 1981)…………………..13

*Solis v. State*, 589 S.W.2d 444 (Tex. Crim. App. 1979)……………….......10

*Stogsdill v. State*, 552 S.W.2d 481 (Tex. Cr. App. 1977)…………………13

*Villarreal v. State,* 865 S.W.2d 501(Tex.App.-Corpus Christi 1993, pet. ref'd)……………………………………………………………………..16

*Willis v. State*, 2 S.W.3d 397 (Tex. App.-Austin 1999, no pet.)………...…10

TEX. CODE CRIM. PROC. ANN. art. 42.12, § 5(b) (West Supp. 2011)…10

THE HONORABLE JUSTICES OF THE COURT OF APPEALS:

COMES NOW, PETER EZEBUNWA, Appellant in this cause, by and through his attorney of record, Amber Vazquez Bode, and pursuant to the provisions of Tex. R. App. Pro. 38, *et seq.*, files this brief on appeal.

## STATEMENT OF THE CASE

Appellant entered into a plea agreement for four year deferred adjudication community supervision ("probation") on November 1, 2011on a third degree felony charge of Possession of a Controlled Substance-Cocaine.  (CR Vol. 1, pgs 46-55).   On April 10, 2014, Appellant was arrested and charged with a subsequent Possession of a Controlled Substance- Cocaine.  (CR Vol. 1, pgs 158-159).   A Motion to Proceed with Adjudication of Guilt was filed by the Travis County District Attorney's Office on April 15, 2014.  (CR Vol. 1, pgs 158-159).  On October 8, 2014, Appellant plead "not true" to the allegations and a hearing on the merits was heard by the trial court.  (RR Vol. 1, pg 1-6).  The trial court found the allegation "true" by a preponderance of the evidence that Appellant committed a subsequent offense by having "care, custody or control" of cocaine.  (RR Vol. 1, pg 74).  The trial court revoked Appellant's deferred adjudication probation and sentenced him to five years in the Texas Department of Criminal Justice institutional division.  (RR Vol. 1, pg 75).

PETER EZEBUNWA                              1                    Appellant's Brief
No. 03-14-00682-CR

The subsequent Possession of a Controlled Substance- Cocaine case (D1DC-14-202070), the substance of which was the sole reason given for the revocation, was dismissed on October 20, 2014.  The trial court certified appellant's right to appeal, and appellant consequently perfected appeal. (CR 180).  Tex.R.App.Proc. 26.3.

<u>ISSUE PRESENTED</u>

THE EVIDENCE IS INSUFFICENT TO SUPPORT THE TRIAL COURT'S FINDING THAT APPELLANT HAD VIOLATED THE TERM ON HIS COMMUNITY SUPERVISION, SPECIFCALLY, THAT EVIDENCE SUPPORTED A FINDING THAT APPELLANT HAD "CARE, CUSTODY OR CONTROL" OF COCAINE.

SUMMARY OF FACTS

On October 4, 2011 Appellant entered into a plea deal with the Travis County District Attorney's Office on a third degree felony Possession of a Controlled Substance in the 427th District Court in Travis County, Texas. (CR Vol. 1, pgs 39-43). Mr. Ezebunwa was placed on a four year deferred adjudication probation. (CR Vol. 1, pgs 44-55). As conditions of probation he had to pay various fees, report to probation, and attend drug treatment. (CR Vol. 1 pgs 47-49). On February 2, 2012, after hearing a Motion to Proceed with Adjudication of Guilt that was based on the Appellant testing positive for marijuana, the trial court added a condition that Appellant complete the SMART residential treatment program and aftercare. (CR Vol. 1, pg 64). On July 10, 2012, after a Motion to Proceed with Adjudication of Guilt was filed based on Appellant's unsuccessful discharge from SMART, the trial court amended the conditions of his probation and added the six to nine month SAFPF program. (CR Vol. 1, pg 66-68). Appellant successfully completed the SAFPF program, but was not successful in the aftercare requirement at the Austin Transitional Center, so on April 1, 2013, another Motion to Proceed with Adjudication of Guilt was filed by the Travis County District Attorney. (CR Vol. 1, pg 75). The trial court continued Appellant on May 30, 2013. (CR Vol. 1, pg 150).

On April 10, 2014, Appellant was charged with a subsequent Possession of a Controlled Substance-Cocaine. (CR Vol. 1, pg 159). A Motion to Proceed with Adjudication of Guilt was filed by the Travis County District Attorney on April 15, alleging a positive urine specimen, delinquency on various fees and that Appellant "[C]omitted a subsequent criminal offense of Possession of a Controlled Substance in that on or about the 10th day of April 2014, in the County of Travis, State of Texas, Peter Ezebunwa did then and there knowingly and intentionally possess a controlled substance, to wit: Cocaine in an amount by aggregate weight, including any adulterants and dilutants, of 4 grams or more but less than 200 grams." (CR Vol. 1, pg 159).

On October 8, 2014, Appellant plead "not true" to the allegations contained in the Motion to Proceed with the Adjudication of Guilt. (RR Vol. 1, pg 6). A hearing was held and the State called Ms. Leslie Barrett as their first witness, Appellant's probation officer. (RR Vol. 1, pg 7). During Ms. Barrett's testimony, it was established that Appellant had completed SAFPF and aftercare successfully. (RR Vol. 1, pg 19). Furthermore, Ms. Barrett testified that she could not speak to the urine sample's analysis and the State agreed to "skip over it," effectively abandoning it as an allegation. (RR Vol. 1, pg 13). Ms. Barrett also testified that she had been working with

Appellant on his probation fees due to the fact that he had been attending in-patient treatment on and off for over twelve months and was unable to seek employment while in treatment. (RR Vol. 1, pgs 17-21). Ms. Barrett also stated that she was "working with him" on his delinquent supervision fees during his last visit with her and had waived $480.00 in fees that were alleged in the State's Motion to Proceed with Adjudication of Guilt. (RR Vol. 1, pg 21).

Joshua Euhus, an Austin Police Officer who arrested Appellant on the subsequent charge, was called by the State next. (RR Vol. 1, pg 23). Officer Euhus testified that he responded to a call from a woman about people in her yard, met with the complainant, who claimed that there were three to four people she thought might be selling drugs in her backyard. (RR Vol. 1, pg 25). Officer Euhus testified that he saw a group of people near the ally, and specifically a black man in a green jacket standing near the fence. (RR Vol. 1, pg 27). He went on to say the man matched the description that had been provided to him and that the man was "milling around," and that at least three other people were standing close to him, approximately less than ten feet away from where he was standing. (RR Vol. 1, pgs 27-28). Officer Euhus said that the black male was "shifting his weight" while standing and that he watched him for a couple of minutes.

(RR Vol. 1, pg 28). He stated that the black man in the green jacket was identified as Appellant, and that he decided to detain all four people. (RR Vol. 1, pg 29).

Officer Euhus testified that based on the location being an extremely high drug trafficking area and the statement of the complainant, he detained them based on a reasonable suspicion that illegal drug trafficking was taking place. (RR Vol. 1, pg 30). He went on to say that he walked over near where Appellant had first been standing and saw a pile of rocks stacked up. (RR Vol. 1, pg 31). He kicked the rock pile down and discovered a bag with small white rocks that in his training and experience he recognized as crack cocaine. (RR Vol. 1, pg 31). Officer Euhus spoke to Appellant and Appellant explained that he was coming from a girlfriend's house (RR Vol. 1, pg 44-45).

Appellant was subsequently searched and found to have a pay check stub and $740.00 in his pockets. (RR Vol. 1, pg 35). Testimony went on to say that another person in the group became belligerent and ended up getting arrested. (RR Vol. 1, pg 36). Officer Euhus went on to explain that he was familiar with that specific area and that drug dealers frequently hide drugs nearby instead of carrying with them to deal on the street. (RR Vol. 1, pg 37). He went on to say that if a suspect was arrested near that intersection

and their drugs were not on them that the drugs would most likely remain wherever they had been hidden.  (RR Vol. 1, pg 37).

The officer explained that his theory of Appellant being in "possession" of the drugs was based on the fact that the rock pile was less than five feet away from Appellant and he considered it a "lunge able distance."  (RR Vol. 1, pg 38).  He clarified on cross-examination that he never saw Appellant touch the drugs in question, nor did he see him touch the rock pile.  (RR Vol. 1, pg 38).  He stated the only thing he saw Appellant touch was a nearby chair, and that he watched him stand there for approximately one minute.  (RR Vol. 1, pgs 38-39).  Furthermore, Officer Euhus testified that he never saw Appellant sell drugs in that area, and that he did not check the criminal history or credibility of the complaining witnesses that they spoke to in the first place.  (RR Vol. 1, pg 44).

Officer Bolin testified next for the State, and he testified that Appellant did not do anything in his observation that heightened his suspicions.  (RR Vol. 1, pg 50).  Officer Bolin testified that it was a high drug trafficking area and that a complaining witness had claimed she had "observed people dealing drugs."  (RR Vol. 1, pg 51).  He stated it was late in the evening and dark outside.  (RR Vol. 1, pg 52).  He went on to say that after they discovered the drugs under the pile of rocks in the alley, him and

Officer Euhus, "[h]ad a little powwow about it and kind of decided what we were going to do. We determined at that point in time we did have probable cause to believe that he [Appellant] was the only one in care, custody, and control of the crack cocaine, so we decided he was under arrest." (RR Vol. 1, pg 53).

Officer Bolin went on to clarify that he never actually saw Appellant sell any drugs and that no officer found any drugs on his person. (RR Vol. 1, pgs 54-55). He also never saw in touching the rocks or digging in the rock pile in the alley. (RR Vol. 1, pg 55-56).

The final witness was a chemist that testified the substance recovered from the bag under the rock pile was in fact cocaine. (RR Vol. 1, pgs 60-69).

SUMMARY OF ARGUMENT

**POINT OF ERROR**: THE EVIDENCE IS INSUFFICENT TO SUPPORT THE TRIAL COURT'S FINDING THAT APPELLANT HAD VIOLATED THE TERM ON HIS COMMUNITY SUPERVISION, SPECIFCALLY, THAT EVIDENCE SUPPORTED A FINDING THAT APPELLANT HAD "CARE, CUSTODY OR CONTROL" OF COCAINE.

**Standard of Review**

The decision to proceed to adjudication of guilt and to revoke deferred-adjudication community supervision is reviewable in the same manner as a revocation of ordinary community supervision. See TEX. CODE CRIM. PROC. ANN. art. 42.12, § 5(b) (West Supp. 2011). An order revoking community supervision under an abuse of discretion standard. *Rickels v. State*, 202 S.W.3d 759, 763 (Tex. Crim. App. 2006); *Cardona v. State*, 665 S.W.2d 492, 493 (Tex. Crim. App. 1984). In a revocation hearing, the State must prove by a preponderance of the evidence that a defendant violated the terms of her probation. *Moreno v. State,* 22 S.W.3d 482, 488 (Tex.Crim.App. 1999) (en banc); *Cobb v. State,* 851 S.W.2d 871, 873 (Tex.Crim.App. 1993) (en banc); *Willis v. State,* 2 S.W.3d 397, 399 (Tex.App.-Austin 1999, no pet.). The State's burden of proof is satisfied if the greater weight of credible evidence creates a reasonable belief that the defendant violated a condition of her probation as alleged by the State. *Solis v. State,* 589 S.W.2d 444, 447

(Tex.Crim.App.1979); *Kulhanek v. State,*587 S.W.2d 424, 426

(Tex.Crim.App.1979); *Ortega v. State,* 860 S.W.2d 561, 564 (Tex.App.-

Austin 1993, no pet.). A trial court's decision to revoke probation is

reviewed for an abuse of discretion. *Cardona v. State,* 665 S.W.2d 492, 493

(Tex.Crim.App.1984) (en banc); *Willis*, 2 S.W.3d at 398-99; Ortega, 860

S.W.2d at 564.

A trial court abuses its discretion if the decision is so clearly wrong as

to lie outside the zone within which reasonable persons might

disagree. *Cantu v. State,* 842 S.W.2d 667, 682 (Tex.Crim.App.1992) (en

banc); *Willis*, 2 S.W.3d at 399. We view the evidence presented in a

revocation proceeding in the light most favorable to the trial court's

ruling. *Garrett v. State,* 619 S.W.2d 172, 174 (Tex.Crim.App.1981); *Willis*,

2 S.W.3d at 399; *Ortega*, 860 S.W.2d at 564. As the trier of fact, it is left to

the trial court to judge the credibility of witnesses and the weight to be given

their testimony. *Garrett*, 619 S.W.2d at 174; *Ortega,* 860 S.W.2d at 564.

To prove drug possession, the State must show (1) a defendant

exercised care, custody, control, or management over the drugs, and (2) that

she knew she possessed a controlled substance. *Brown v. State,* 911 S.W.2d

744, 747 (Tex.Crim.App.1995) (en banc); *Martinets v. State,* 884 S.W.2d

185, 187 (Tex.App.-Austin 1994, no pet.) When considering a complaint that the evidence is insufficient, the court must determine whether, viewing the evidence in the light most favorable to the verdict, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.. *See Butler v. State*, 769 S.W. 2d 234, 239 (Tex. Crim. App. 1989).

A defendant must exercise care, custody, control, and management over illicit drugs, knowing them to be drugs, before he is guilty of their possession. *Dickey v. State,* 693 S.W.2d 386, 389 (Tex.Crim.App.1984). If the defendant is not in sole possession of the premises where drugs are found, the state must prove an affirmative link between the contraband and the defendant to establish his possession. *Deshong v. State,* 625 S.W.2d 327, 329 (Tex.Crim.App. [Panel Op.] 1981). An affirmative link is established by facts and circumstances from which one may reasonably infer that the defendant knew the contraband existed and that he exercised care, custody, control, and management over it. *Dickey*, 693 S.W.2d at 389. However, mere presence alone is insufficient to affirmatively link a defendant to narcotics. *Meeks v. State*, 692 S.W.2d 504, 509 (Tex. Crim. App. 1985).

It is settled that where this Court finds the evidence to be insufficient to sustain a conviction, the constitutional guarantee against double jeopardy precludes further prosecution of the cause. *Burks v. United States,* 437 U.S. 1, 98 S.Ct. 2141, 57 L.Ed. 2d 1 (1978); *Greene v. Massey,* 437 U.S. 19, 98 S.Ct. 2151, 57 L.Ed. 2d 15 (1978).

While the evidence may strongly suggest that the appellant is guilty of the offense charged, a conviction based on circumstantial evidence cannot be sustained if the circumstances do not exclude every other reasonable hypothesis except that of the guilt of the accused. Proof that amounts only to a strong suspicion or mere probability is insufficient. *Dubry v. State*, supra; *Sewell v. State*, supra; *Easley v. State,* 564 S.W.2d 742 (Tex.Cr.App. 1978); *Stogsdill v. State,* 552 S.W.2d 481 (Tex.Cr.App. 1977); *Duff v. State,* 546 S.W.2d 283 (Tex.Cr.App. 1977). Texas courts have found that the evidence creates no more than a suspicion of the appellant's guilt of the offense charged, and is insufficient to sustain the conviction. See *Dubry v. State*, supra; *Sewell v. State*, supra. *Sinor v. State*, 612 S.W.2d 591, 594 (Tex. Crim. App. 1981).

A conviction based on circumstantial evidence cannot be sustained if the circumstances do not exclude every other reasonable hypothesis except that of the guilt of the accused, and proof amounting to only a strong suspicion or mere probability is insufficient. *Sewell v. State*, supra; *Easley v. State,* 564 S.W.2d 742 (Tex.Cr.App.1978); *Stogsdill v. State,* 552 S.W.2d 481 (Tex.Cr.App.1977). Similar to the facts in Appellant's case, *Dubry v. State* involved a scenario in which the Defendant was in a pick up a mile from an airport in which marijuana had just been brought in on two separate flights and hidden in bags close to the runway. *Dubry v. State*, 582 S.W.2d 841, 842 (Tex. Crim. App. 1979). Three people ran and two had been caught and ground to air radios and red flashers were found near them. *Id.* Dubry was found a mile away in a truck and possessed ground to air radio and red flashers identical to the ones found near the two other people. *Id.* Police found marijuana in sweepings from the pick up bed, but no other connection other than proximity and suspicious circumstances. *Id.* The Court held that the evidence creates only a strong suspicion of the appellants' guilt of the offense charged, and is insufficient to sustain the convictions. See *Sewell v. State*, supra; *Reyes v. State,* 575 S.W.2d 38(Tex. Cr. App. 1979); *Wilkes v. State*, supra.

*Armstrong v. State* is even more analogous to the current fact scenario, in which a woman in a car accident. *Armstrong v. State*, 82 S.W. 3d 444 (Tex. App.-Austin 2002). Officers responded to an accident scene in which a two women and three children had been in the car, and based on an observation that Armstrong "[w]as more interested in locating this purple bag….than worrying about the children." *Id* at 446. Felicia, Armstrong's passenger, was holding the bag and gave consent to search it. *Id.* The officer never saw Armstrong holding the bag in question, but attributed the contents, which was cocaine, to Armstrong because of the report that she was concerned about it. *Id.*

The court explained, that to prove drug possession, the State must show (1) a defendant exercised care, custody, control, or management over the drugs, and (2) that she knew she possessed a controlled substance. *Brown v. State,* 911 S.W.2d 744, 747 (Tex.Crim.App.1995) (en banc); *Martinets v. State,* 884 S.W.2d 185, 187 (Tex.App.-Austin 1994, no pet.). When a defendant is not in exclusive possession or control of the place where the drugs are found, the State must affirmatively link the defendant with the drugs. *Brown*, 911 S.W.2d at 747-48; *Hackleman v. State,* 919 S.W.2d 440, 444 (Tex.App.-Austin 1996, pet. ref'd, untimely filed);

*Martinets*, 884 S.W.2d at 187. More than the defendant's mere presence near the drugs is required, especially when several people are present or in possession of the place where the drugs are found. *Villarreal v. State,* 865 S.W.2d 501, 503 (Tex.App.-Corpus Christi 1993, pet. ref'd); *Estrada v. State,* 643 S.W.2d 753, 756 (Tex.App.-San Antonio 1982, no pet.).

It went on to explain that the State's evidence need not exclude every reasonable hypothesis other than the defendant's guilt, but it must show facts and circumstances that, viewed in the totality of the circumstances, indicate the defendant's knowledge and control over the drugs. *See Brown*, 911 S.W.2d at 748; *Hyett v. State,* 58 S.W.3d 826, 830 (Tex.App.-Houston [14th Dist.] 2001, no pet.); *Howard v. State,* 972 S.W.2d 121, 124 (Tex.App.-Austin 1998, no pet.). Affirmative links between a defendant and illegal drugs may include: the defendant's presence when the drugs are found; whether the drugs or other contraband were in plain view; the defendant's proximity to and the accessibility of the drugs; whether the defendant was under the influence of drugs when the drugs were found; whether the defendant possessed other contraband or drug paraphernalia; whether the defendant made incriminating statements or furtive gestures or tried to flee; whether there was any noticeable drug odor; whether the defendant had the

right to possess the place where the drugs were found; and whether that place was enclosed. *See Hyett*, 58 S.W.3d at 830; *Martinets*, 884 S.W.2d at 188; *Villarreal*, 865 S.W.2d at 503-04. In the current case under review, the only links are the defendant's proximity and presence.

In its finding, the court decided, "Although the State had the burden of showing Armstrong knowingly and intentionally exercised care, custody, control, or management over the drugs found in the purple bag, it was not obligated to prove this beyond a reasonable doubt or to exclude all reasonable alternative hypotheses other than Armstrong's guilt. *See Brown*, 911 S.W.2d at 748; *Cobb v. State*, 851 S.W.2d 871, 873 (Tex. Crim. App. 1993)(en banc); *Martinets*, 884 S.W.2d at 187. However, the State was obligated to affirmatively link Armstrong to the drugs by a preponderance of the evidence. *See Brown*, 911 S.W.2d at 748; *Cobb*, 851 S.W.2d at 873. We do not believe the State carried its burden of producing evidence that could create the reasonable belief that Armstrong both exercised care, custody, or control over the drugs and knew she possessed a controlled substance. *See*

*Brown*, 911 S.W.2d at 747; *Solis*, 589 S.W.2d at 447; *Kulhanek*, 587 S.W.2d at 426. The affirmative links are too weak to support the district court's finding that Armstrong violated her probation by intentionally and knowingly possessing the drugs found in the purple bag." *Armstrong* at 450.

In the case at hand, the Appellant was never seen with the drugs, he did not appear to be under the influence of any substance, there was no smell of a substance noted, there were other people around, and unlike the Armstrong case, and he never made any affirmative statement linking him to the drugs. Therefore, the evidence was insufficient to support a finding that the Appellant violated his probation by a preponderance of the evidence.

## **PRAYER FOR RELIEF**

WHEREFORE, PREMISES CONSIDERED, Appellant respectfully prays this Court to reverse the district court's order and remand for further proceedings. Also alternatively, Appellant respectfully prays this Court to reverse his sentence and remand the case to the trial court for further proceedings.

Respectfully submitted,


/s/Amber Vazquez Bode
AMBER VAZQUEZ BODE
Attorney at Law
1004 West Ave.
Austin, Texas 78701
(512) 220-8507
SBN # 24039225
ATTORNEY FOR APPELLANT

## CERTIFICATE OF SERVICE

By affixing my signature above, I hereby certify that a true and correct copy of the forgoing APPELLANT'S BRIEF, was filed through the Third Court of Appeals Efile Texas system and through the United States Postal Service to:

> Catherine Scales
> Assistant District Attorney
> Travis County District Attorney's Office
> P.O. Box 1748
> Austin, Texas 78767

On July 6, 2015.

## CERTIFICATE OF COMPLIANCE

I certify that this document contains 4,194 words (counting all parts of the document). The body text is in 14 point font, and the footnote text is in 12 and 14 point font.