# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-04-00689-CR

**Jose Borja Villegas, Appellant**

**v.**

**The State of Texas, Appellee**

## FROM THE DISTRICT COURT OF BASTROP COUNTY, 21ST JUDICIAL DISTRICT
### NO. 11137, HONORABLE H. R. TOWSLEE, JUDGE PRESIDING

## M E M O R A N D U M   O P I N I O N

A jury found appellant Jose Borja Villegas guilty of possession of marihuana in an amount greater than four ounces but less than five pounds. *See* Tex. Health & Safety Code Ann. § 481.121(b)(3) (West 2003). Villegas was sentenced to nine months in state jail and assessed an $875 fine. In his first issue, Villegas argues that the State's exercise of its peremptory challenges was racially discriminatory and the trial court erred in overruling his *Batson* challenges. In his second and third issues, Villegas challenges the legal and factual sufficiency of the evidence. We affirm the judgment of conviction.

## BACKGROUND

On the evening of February 20, 2004, Officer Gary Santee of the Smithville Police Department stopped a car in Elgin for failing to signal a turn. Villegas was sitting in the front

passenger seat. A few minutes before the stop, the driver had seen his friend Villegas walking along the road and offered him a ride.

At the stop, Officer Santee asked the driver for his license and registration.[1] While the driver reached into his glove box, Officer Santee used his flashlight to illuminate the inside of the car. He noticed a plastic bag partially sticking out from under the passenger's seat, beneath Villegas's legs. Officer Santee testified at trial that Villegas was attempting to use his legs to conceal the plastic bag and push it under the passenger seat. When confronted on cross examination with the fact that he left this detail out of his police report, Officer Santee asserted that he only used such reports to refresh his memory.

Officer Santee walked around the car and asked Villegas about the plastic bag. Villegas answered that he did not know what the officer was talking about. The officer also noticed a can of beer between Villegas's legs and asked him to remove it. As Villegas was doing so, Officer Santee shined his flashlight and observed a green leafy substance in the plastic bag that he believed to be marihuana. After asking Villegas to hand the bag to him, Officer Santee reached down and picked it up, confirming that the bag contained marihuana. Villegas continued to deny any knowledge or ownership of the marihuana. Officer Santee then took Villegas into custody and called for backup. After some initial confusion over who should be arrested, Officer Santee arrested both men for possession of marihuana. Charges against the driver were later dropped.

---

[1] The State introduced a videotape recording of the stop made by a camera in Officer Santee's patrol car. The tape was played before the jury and the audio portion is transcribed in the reporter's record.

At trial, the driver testified that he did not place the bag of marihuana in the car and that the bag was not there before he picked Villegas up. The first time the driver saw the bag was when Officer Santee pointed it out. The driver also testified that no one else had used the car that day or had regular access to it, although the listed owner of the car was the driver's father. Finally, the driver testified that he noticed Villegas was holding a can in a paper sack when he entered the car but did not notice Villegas carrying anything else.

The jury found Villegas guilty and the trial court entered judgment on the verdict. Villegas brings this appeal.

## DISCUSSION

### Legal and Factual Sufficiency

In his second and third issues, Villegas challenges the legal and factual sufficiency of the evidence of marihuana possession. When there is a challenge to the sufficiency of the evidence to sustain a criminal conviction, the question presented is whether a rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 324 (1979) (legal sufficiency); *Griffin v. State*, 614 S.W.2d 155, 158-59 (Tex. Crim. App. 1981) (legal sufficiency); *Zuniga v. State*, 144 S.W.3d 477, 484 (Tex. Crim. App. 2004) (factual sufficiency). In a legal sufficiency review, all the evidence is reviewed in the light most favorable to the verdict; it is assumed that the trier of fact resolved conflicts in the testimony, weighed the evidence, and drew reasonable inferences in a manner that supports the verdict. *Griffin*, 614 S.W.2d at 159 (citing *Jackson*, 443 U.S. at 318-19).

3

In a factual sufficiency review, all the evidence is considered equally, including the testimony of defense witnesses and the existence of alternative hypotheses. *Orona v. State*, 836 S.W.2d 319, 321 (Tex. App.—Austin 1992, no pet.). Although due deference still must be accorded the fact finder's determinations, particularly those concerning the weight and credibility of the evidence, the reviewing court may disagree with the result in order to prevent a manifest injustice. *Johnson v. State*, 23 S.W.3d 1, 9 (Tex. Crim. App. 2000). The evidence will be deemed factually insufficient to sustain the conviction if the evidence of guilt, considered alone, is too weak to support a finding of guilt beyond a reasonable doubt, or if the strength of the contrary evidence precludes a finding of guilt beyond a reasonable doubt. *Zuniga*, 144 S.W.3d at 484-85. In conducting a legal or factual sufficiency review, we consider all the evidence, rightly or wrongly admitted. *Camarillo v. State*, 82 S.W.3d 529, 537 (Tex. App.—Austin 2002, no pet.).

The offense of marihuana possession is committed when a person knowingly and intentionally possesses a usable quantity of marihuana. Tex. Health & Safety Code Ann. § 481.121(a) (West 2003). The State must prove the legal elements of the offense by showing that (1) the defendant exercised actual care, custody, control, or management over the drugs, and (2) the defendant knew he possessed a controlled substance. *Brown v. State,* 911 S.W.2d 744, 747 (Tex. Crim. App. 1995); *Armstrong v. State*, 82 S.W.3d 444, 449 (Tex. App.—Austin 2002, pet. ref'd). If the defendant did not exclusively possess or control the place where the drugs were found, the State must present "affirmative links" that connect the defendant to the drugs. *Armstrong*, 82 S.W.3d at 449. The State's evidence does not have to exclude every reasonable hypothesis other

4

than the defendant's guilt. *Id.* But the totality of the circumstances must indicate that the defendant had knowledge and control over the drugs. *Id*.

Some of the facts and circumstances the State may use as affirmative links include the defendant's proximity to the drugs when the drugs are found; any noticeable drug odor; any other contraband on the defendant; any incriminating statements, furtive gestures, or attempts to flee; whether the drugs or other contraband are in plain view; whether the defendant was intoxicated when the drugs were found; whether the space in question was enclosed; and whether the person had a right to possess the place where the drugs were found. *Id*. (citations omitted). In evaluating whether the legal elements were established, the number of factors present in each case is less important than the overall "logical force" created by the factors. *Martinets v. State,* 884 S.W.2d 185, 188 (Tex. App.—Austin 1994, no pet.).

Villegas asserts that the State's evidence is legally insufficient because it failed to show that he exercised dominion and control over the marihuana. He points out that he was in the car for a short time; that the driver did not notice any marihuana when Villegas got in; that Villegas responded to Officer Santee's questions about the marihuana by saying he did not know what the officer was talking about; and that neither Officer Santee nor the driver testified that Villegas owned the marihuana or placed it in the car.

The affirmative links in this case include the close proximity and accessibility of the marihuana to Villegas, the enclosed space of the car, and the fact that the marihuana was in plain view. Officer Santee's testimony that Villegas was making furtive attempts to conceal the marihuana is another affirmative link tending to establish Villegas's knowledge and control of the marihuana.

5

*See Armstrong*, 82 S.W.3d at 449. Finally, the driver's testimony that no one else had used the car that day and that there was no marihuana in the car before he picked up Villegas is circumstantial evidence that implicates Villegas. The totality of the circumstances presents some evidence to indicate Villegas's knowledge and control of the marihuana. *See Armstrong*, 82 S.W.3d at 449. Viewed in the light most favorable to the verdict, the combined force of the evidence in this case would have allowed a rational juror to find the legal elements of marihuana possession beyond a reasonable doubt. Having found the evidence legally sufficient to support the conviction, we overrule Villegas's second issue.

As with his legal sufficiency point, Villegas bases much of his factual insufficiency argument on the inability of either Officer Santee or the driver to testify definitively that Villegas owned the marihuana, knew of its existence, or placed it in the car. In addition, Villegas points to the fact that Officer Santee did not mention that he saw Villegas trying to conceal the marihuana with his legs in the police report. Villegas contends that this discrepancy renders Officer Santee's testimony "inherently unreliable." Finally, Villegas argues that Officer Santee's testimony that Villegas was "in possession" of the marihuana was an improper legal conclusion by a non-expert witness. *See* Tex. R. Evid. 701; *Gross v. State*, 730 S.W.2d 104, 106 (Tex. App.—Texarkana 1987, no pet.).

Viewing the evidence neutrally, there is evidence of Villegas's close proximity to the marihuana; the driver testified that no one had been in the car or used it that day and no marihuana was in the car before he picked up Villegas; and Officer Santee testified about Villegas's furtive attempts to conceal the marihauna. Villegas points to no authority standing for the proposition that

6

an omission in a police report will render an officer's testimony "inherently unreliable" as a matter of law. This is a matter of witness credibility, which is solely in the province of the jury. *See Jones v. State*, 944 S.W.2d 642, 648 (Tex. Crim. App. 1996). Furthermore, Villegas's point that Officer Santee offered improper legal conclusions is irrelevant because both rightly and wrongly admitted evidence may be considered under a factual sufficiency review. *See Camarillo*, 82 S.W.3d at 537. After reviewing all of the evidence in a neutral light, we find that the evidence is factually sufficient and a jury would be rationally justified in finding guilt beyond a reasonable doubt. We overrule Villegas's third issue.

### *Batson* **Challenges**

In his first issue, Villegas argues that the State was racially discriminatory in its exercise of peremptory challenges and the trial court erred in overruling his *Batson* challenges. *See* U.S. Const. amend. XIV; *Batson v. Kentucky*, 476 U.S. 79 (1986). After Villegas objected to the State's use of peremptory challenges to strike the only three African-American males on the venire panel,[2] the prosecutor was placed under oath by the trial judge for direct examination by Villegas's attorney. The prosecutor testified that two of the veniremembers were struck for demeanor and youth reasons, while the third was struck for lack of competence and age reasons. The trial court overruled all three *Batson* challenges, allowing the strikes to stand. We must decide whether the

---

[2] Villegas's race is not at issue because the validity of a *Batson* challenge does not depend on the existence of racial identity between the defendant and the veniremember. *See Mead v. State*, 819 S.W.2d 869, 870 (Tex. Crim. App. 1991) (citing *Powers v. Ohio*, 499 U.S. 400, 415 (1991)).

7

prosecutor offered legitimate race-neutral reasons for each strike, and, if so, whether the trial court's decision to accept the prosecutor's explanations should be sustained.

We examine *Batson* challenges under a "clearly erroneous" standard of review, viewing the evidence in the light most favorable to the trial court's ruling. *Gibson v. State*, 144 S.W.3d 530, 534 (Tex. Crim App. 2004); *Mandujano v. State*, 966 S.W.2d 816, 819 (Tex. App.—Austin 1998, pet. ref'd) (citations omitted). A trial court's decision is clearly erroneous if it leaves a "definite and firm conviction that a mistake has been committed." *Vargas v. State*, 838 S.W.2d 552, 554 (Tex. Crim. App. 1992). If no clear error is found, we must uphold the trial court's rulings, even if we might have weighed the evidence differently had we served as the trier of fact. *Lopez v. State*, 940 S.W.2d 388, 390 (Tex. App.—Austin 1997, pet. ref'd)). Because *Batson* challenges concern the credibility of the prosecutor's race-neutral explanations, great deference must be given to the trial court's rulings. *Mandujano*, 966 S.W.2d at 819.

A *Batson* challenge is analyzed in three steps. *See id*. at 818; *see also Hernandez v. New York*, 500 U.S. 352, 364-65 (1991). The first step requires the defendant to make a prima facie case of racial discrimination. *Mandujano*, 966 S.W.2d at 818. This requirement can be met by minimal evidence to support a rational inference that the prosecution exercised its peremptory strikes in a discriminatory manner. *Id*. If the defendant makes a prima facie case, the burden shifts to the prosecution to give a race-neutral explanation for the strikes. *Id*. To be race-neutral, the prosecutor's explanation must be clear, reasonably specific, and relevant to the case at hand. *Id*. If the prosecution offers a race-neutral reason, the burden then shifts back to the defendant in the third

8

step. *Id*. Here, the defendant must demonstrate that the explanation is a pretext and the strike is, in fact, racially motivated. *Id*.

The review of a prosecutor's race-neutral reason is meant to focus on the genuineness of the prosecutor's motive, not the reasonableness of the explanation. *Id*. at 820 (citing *Purkett v. Elem*, 514 U.S. 765, 769 (1995)). A "legitimate reason" does not mean a sensible reason; it simply means a reason that does not deny equal protection. *Purkett*, 514 U.S. at 768. The prosecutor's reason does not even have to be persuasive or plausible. *Id*. This focus on the prosecutor's intent is supported by the view that "[a] ruling on a *Batson* objection is a credibility determination." *Mandujano*, 966 S.W.2d at 820 (quoting *Morris v. State*, 940 S.W.2d 610, 612 (Tex. Crim. App. 1996)). Because intent is crucial, a discriminatory impact is not enough to find a *Batson* violation without a discriminatory motive. *See id.* (citing *Hernandez*, 500 U.S. at 362).

The second step requires the prosecutor to present a facially neutral and reasonably specific explanation. *Id*. The prosecutor cannot satisfy the second step by simply making a general denial of discriminatory motive or asserting good faith. *Purkett*, 514 U.S. at 769. The prosecutor's explanation will be deemed a facially valid, race-neutral reason unless a discriminatory intent is inherent in the explanation. *Hernandez*, 500 U.S. at 360. The specificity requirement, in turn, causes a prosecutor's general statement, such as, "I didn't like the way he looked," to fail under the second step. The more specific statement, "I didn't like the way he looked because he had long, unkempt hair and wore both a mustache and a goatee," would likely pass muster. *Mandujano*, 966 S.W.2d at 821 (citing *Purkett*, 514 U.S. at 767-70); *see also Lee v. State*, 949 S.W.2d 848, 851 (Tex. App.—Austin 1997, pet. ref'd).

9

If the prosecutor offers a race-neutral reason, the opponent of the peremptory challenge has the burden to persuade the trial court that the prosecutor's reason is, in fact, a pretext for racial discrimination. *See Hernandez*, 500 U.S. at 359. Objective factors the opponent may use to support a claim of pretext against the prosecutor include a lack of questions or a lack of meaningful questions directed to the veniremember; disparate treatment or examination of other veniremembers with the same or similar characteristics as the stricken veniremember; failure to demonstrate that a group trait applies to the veniremember when the reason for the strike was based on a group bias; and the absence of a rational relationship between the reasons for the strike and the case. *Keeton v. State*, 749 S.W.2d 861, 868 (Tex. Crim. App. 1988); *see Williams v. State*, 804 S.W.2d 95, 106 (Tex. Crim. App. 1991) (approving *Keeton* factors under "clearly erroneous" standard of review). However, these factors are not determinative upon review of a *Batson* ruling; the overriding standard is still whether the trial court's decision was clearly erroneous. *Vargas*, 838 S.W.2d at 554.

In this case, the issue is whether the trial court clearly erred in overruling Villegas's *Batson* challenges to the prosecution's use of three strikes against the only three African-American males on the venire panel. At the first step of the *Batson* test, it seems likely that a prima facie case is established when all African-American males are struck from the venire.[3] *See Yarborough v. State*, 947 S.W.2d 892, 904 n.5 (Tex. Crim. App. 1997) (collecting cases).

---

[3] In any case, once the prosecutor has offered an explanation for the strike and the trial judge has ruled on the *Batson* challenge as a whole, the first step becomes moot. *Mandujano v. State*, 966 S.W.2d 816, 819 (Tex. App.—Austin 1998, pet. ref'd) (citing *Rhoades v. State*, 934 S.W.2d 113, 124 (Tex. Crim. App. 1996)).

10

In the second step, the prosecution was required to present a race-neutral reason for each strike. To justify the strike of the first veniremember, the prosecutor explained that her impression was that Eric Haywood slouched the whole time, was not interested in being there, and did not make eye contact with the prosecutor. The prosecutor related that another prosecutor had also found Haywood to be avoiding eye contact. Moreover, the other prosecutor apparently said Haywood looked angry and had his arms crossed. The prosecutor commented to the court that because of "his hostile demeanor, coupled with his youth, we felt that he would be a hostile juror in this case and that's why we struck him." For veniremember Allen Warren, the prosecutor's testimony was much the same. The prosecutor found that Warren "was very hostile towards me and my entire presentation." This hostility, "coupled with his youth, is why we struck him," the prosecutor said.

As for the third veniremember, Darsche Reese, the prosecutor explained that Reese was stricken "because he indicated on his juror questionnaire that he lived in a county that he did not live in." This mistake was corrected by the court during voir dire, but the prosecutor explained to the court that she considered the mistake "possibly deceptive" or "negligent" and that she did not feel Reese would be a competent juror. The prosecutor also expressed concern about the veniremember's age.

The prosecutor's explanations of each strike do not disclose any inherently discriminatory intent, and the explanations are reasonably specific. *See Mandujano*, 966 S.W.2d at 820. This Court has recognized elsewhere that demeanor-related reasons for peremptory challenges must be examined with "a healthy skepticism." *Woods v. State*, 801 S.W.2d 932, 937 (Tex.

11

App.—Austin 1990, pet. ref'd) (quoting *Daniels v. State*, 768 S.W.2d 314, 317 (Tex. App.—Tyler 1988, pet. ref'd)). Nonetheless, hostile demeanors similar to the ones presented in this case have been held to be race-neutral. *See Yarborough*, 947 S.W.2d at 896. In addition, juror mistake and age have also been determined to be race-neutral in several appellate court decisions. *See, e.g.*, *Satterwhite v. State*, 858 S.W.2d 412, 423 (Tex. Crim. App. 1993) (failure to fill out juror card valid reason for strike); *Brown v. State*, 960 S.W.2d 265, 269 (Tex. App.—Corpus Christi 1997, no pet.) (age valid reason for strike) (collecting cases).

After the prosecutor presented legitimate race-neutral reasons for the State's peremptory challenges, the burden shifted back to Villegas in the third step. Here, Villegas failed to carry his burden because he did not present evidence that the prosecutor's explanations were pretexts for racial discrimination. Villegas's pretext argument relies mainly on the prosecutor's lack of questions to the three veniremembers, which is of slight significance in this case. Villegas did not show, for example, that the prosecutor disparately treated or questioned non-African-American veniremembers who were also exhibiting hostile body language. *See, e.g.*, *Miller-El v. Dretke*, 125 S. Ct. 2317, 2325 (2005) (discussing importance of side-by-side comparisons in showing purposeful racial discrimination).

Overall, Villegas fails to show anything in the record that would contradict the prosecutor's race-neutral explanations and prove pretext in fact. Villegas may have disbelieved the prosecutor's assertions that veniremembers Haywood and Warren were hostile or that Reese was incompetent, but simple disbelief is not enough to show a pretext on the part of the prosecutor. *See Mandujano*, 966 S.W.2d at 821. Moreover, this Court has recognized that "evaluation of the

prosecutor's state of mind based on demeanor and credibility lies 'peculiarly within a trial judge's province.'" *Id*. at 819 (quoting *Hernandez*, 500 U.S. at 365).

We find that the prosecutor offered legitimate, race-neutral reasons for each peremptory challenge and that Villegas failed to meet his burden to show these reasons to be pretexts for racial discrimination. The decision of the trial judge does not leave us with the firm conviction that a mistake has been committed. We overrule Villegas's first issue.

## CONCLUSION

The evidence of marihuana possession was legally and factually sufficient to support Villegas's conviction. The trial court did not clearly err in overruling Villegas's *Batson* challenges. Having overruled all of Villegas's three issues, we affirm the conviction.

Bea Ann Smith

Before Chief Justice Law, Justices B. A. Smith and Pemberton

Affirmed

Filed:   October 20, 2005

Do Not Publish

13