**Opinion issued July 30, 2013**



In The

# Court of Appeals

For The

# First District of Texas

_____

## NO. 01-12-00361-CR
_____

**MANUEL SANTOS MARTINEZ, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

On Appeal from the 262nd District Court
Harris County, Texas
Trial Court Case No. 1216791

## MEMORANDUM OPINION ON REHEARING[1]

---

[1]    We originally issued our memorandum opinion in this appeal on June 11, 2013. The State filed a motion for rehearing. We deny the motion for rehearing, withdraw our previous memorandum opinion, vacate our judgment, and issue this memorandum opinion and the related judgment in their stead.

Appellant, Manuel Santos Martinez, challenges the trial court's judgment adjudicating him guilty of the offense of possession of a controlled substance and sentencing him to 35 years in prison. Appellant presents two issues on appeal. He contends that the evidence was insufficient to support the trial court's finding underlying its decision to grant the State's motion to adjudicate his guilt. Appellant also asserts that the evidence was not sufficient to support the trial court's assessment of court costs against him.

We affirm the judgment, as modified.

## Background

Appellant was placed on four years' deferred adjudication community supervision after pleading guilty to the offense of possession of between one and four grams of cocaine. He also pleaded true to the allegations in two enhancement paragraphs.

The State later filed a motion to adjudicate appellant's guilt, asserting that appellant had violated the conditions of his community supervision by committing the offense of burglary of a habitation. The State also alleged that appellant had failed to pay court costs as ordered.

At the adjudication hearing, the State presented the testimony of Ashley Taylor. She testified that on September 6, 2011 she stayed home from work because she was sick. At around 1:00 p.m. that day, Taylor was lying on the sofa

2

when she heard a knock on her front door. Because she was sick, she did not answer the door. Taylor thought the person would go away, but they continued to knock. The knocking got progressively louder. Taylor thought perhaps her husband had forgotten his key and had come home for lunch. She called her husband and learned that it was not him at the door. Taylor went to a side window to see who it was. She then saw a man—later identified as appellant—walking to a car parked on the street in front of her house. The man got in the passenger side of the car, and it drove away.

Taylor's husband told her over the phone that the people in the car might be "casing the house." He also told her that he was coming home and suggested that she call the police, which she did. After getting off the phone, Taylor retrieved a gun for protection in case appellant returned.

Taylor was waiting for her husband and the police to arrive when she saw the same car return and pull into her driveway. She saw appellant get out of the passenger side of the car. Appellant walked to her front door and began to knock. Taylor did not answer the door. She suddenly heard a loud noise and realized that appellant had kicked in her back door, which is in the kitchen. Taylor ran to the kitchen doorway and yelled at appellant to "get the F out of her house." Taylor saw that appellant was approximately three feet into her house from the back door and was standing in her kitchen. Taylor testified that she was face-to-face with

3

appellant and made eye contact with him. When he saw Taylor, appellant ran out the backdoor without saying anything to her. Taylor chased after appellant and saw him run back to the car in the driveway and get in the passenger side. Taylor testified that a driver was waiting in the car. The car then sped away. Taylor's husband and the police arrived a short time later.

Taylor identified appellant at the adjudication hearing as the man who had entered her home. She stated that she did not previously know him and had not given him permission to enter her house. Taylor acknowledged that appellant had not taken anything from her home.

After hearing Taylor's testimony, the trial court found the State's allegation that appellant had violated the conditions of his community supervision by committing the offense of burglary of a habitation to be true. The court found the State's allegation that appellant had not paid court-ordered court costs was not true because the State had not offered evidence to support that allegation.

Appellant testified during the punishment phase. He stated that he was high at the time that he entered Taylor's house. He denied that he had entered the house to steal, claiming that he did not know what he was doing. He stated, "I wasn't in my right mind."

4

The trial court sentenced appellant, as a habitual offender, to 35 years in prison. In the judgment, the trial court ordered appellant to pay $350 in court costs. This appeal followed. Appellant raises two issues.

## Adjudication of Guilt

In his first issue, appellant contends that the trial court abused its discretion by adjudicating him guilty because the evidence was insufficient to show that he had violated the terms and conditions of his community supervision by committing the offense of burglary of a habitation.

### A. Standard of Review

A trial court's determination on a motion to adjudicate is reviewable in the same manner as a determination of a motion to revoke community supervision. TEX. CODE CRIM. PROC. ANN. art. 42.12, § 5(b) (Vernon Supp. 2012). A revocation proceeding is neither criminal nor civil in nature; rather, it is an administrative proceeding. *Canseco v. State*, 199 S.W.3d 437, 438 (Tex. App.—Houston [1st Dist.] 2006, pet. ref'd). At a revocation hearing, the State must prove by a preponderance of the evidence that the defendant has violated a condition of his community supervision. *Id*. at 438–39. The State satisfies its burden if the greater weight of credible evidence creates a reasonable belief that the defendant violated a condition of his probation as alleged by the State. *Solis v. State*, 589 S.W.2d 444, 447 (Tex. Crim. App. 1979); *Armstrong v. State*, 82 S.W.3d 444, 448

(Tex. App.—Austin 2002, pet. ref'd). Proof of a single violation is sufficient to support a revocation. *Canseco*, 199 S.W.3d at 439.

Our review of an order adjudicating guilt and revoking community supervision is limited to determining whether the trial court abused its discretion in determining that the defendant violated the terms of his community supervision. *Rickels v. State*, 202 S.W.3d 759, 763 (Tex. Crim. App. 2006); *Duncan v. State*, 321 S.W.3d 53, 56–57 (Tex. App.—Houston [1st Dist.] 2010, pet. ref'd). We view the evidence in the light most favorable to the trial court's order. *Canseco*, 199 S.W.3d at 439; *Duncan*, 321 S.W.3d at 57. As the trier of fact at a revocation proceeding, the trial court determines the credibility of the witnesses and the weight to be given to their testimony. *Armstrong*, 82 S.W.3d at 448.

## B. Analysis

Appellant contends that the trial court abused its discretion when it found that he violated the terms of his community supervision by committing the offense of burglary of a habitation. We disagree.

The trial court determined that appellant violated Penal Code section 30.02(a)(3). Under that provision, a person commits the offense of burglary if, without the effective consent of the owner, he enters a habitation and commits or attempts to commit a theft. TEX. PENAL CODE ANN. § 30.02(a)(3) (Vernon Supp. 2012). Appellant argues that the State failed to prove, by a preponderance of the

evidence, that he committed the offense of burglary. Appellant points out that the evidence showed that he was only three feet inside the kitchen when he was met by Taylor, who was holding a gun and shouting at him to leave. Appellant further points out that he then immediately left the house. He argues that the State offered no evidence to show that he had the intent to commit the offense of burglary because "his only action was to flee immediately."

Actual commission of a theft is not a prerequisite to the commission of burglary. *Phillips v. State*, 538 S.W.2d 116, 117 (Tex. Crim. App. 1976). Property need not be taken for proof of intent to commit theft to be sufficient. *See Ortega v. State*, 626 S.W.2d 746, 749 (Tex. Crim. App. 1981). In *Ortega*, the court held the following evidence sufficient to show intent to commit theft: (1) the appellant had been seen prying on the front door of a house in which no one was then home; (2) an accomplice waited in a car parked in front of the house; (3) when he was seen by a uniformed police officer, the appellant immediately stopped his attempt to enter the house and fled in the waiting car; (4) the screen door latch had been pulled off and the wooden door of the house had been damaged in an attempt to pry it open. *Id.*; *see Gear v. State*, 340 S.W.3d 743, 747 (Tex. Crim. App. 2011) (holding evidence sufficient to show intent to commit burglary in case in which appellant broke window on house, but had not entered home, was confronted by homeowner, and then fled); *Stearn v. State*, 571 S.W.2d 177, 177 (Tex. Crim. App.

7

1978) (holding evidence of intent to commit theft sufficient when defendant was found in residence's kitchen and immediately fled, even though nothing in house had been disturbed).

In a burglary prosecution, specific intent to steal or commit theft may be inferred from the circumstances. *Simmons v. State*, 590 S.W.2d 137, 138 (Tex. Crim. App. 1979); *Linder v. State*, 828 S.W.2d 290, 294 (Tex. App.—Houston [1st Dist.] 1992, pet. ref'd). We note that evidence of flight is a circumstance from which inference of guilt may be drawn. *Bigby v. State*, 892 S.W.2d 864, 883 (Tex. Crim. App. 1994).

Here, in addition to appellant's flight, the State also offered additional evidence to show appellant's intent to commit the offense of burglary. The evidence showed that, after knocking on the door and determining that no one was home, appellant left Taylor's house in a car, but returned a short time later, pulling into the driveway. Appellant again knocked on the front door. After no one answered, appellant went to the back of the house and kicked in the kitchen door. Appellant entered Taylor's house, where he was confronted by her holding a gun and yelling at him to leave. Appellant fled, running back to the car waiting with his associate in the driver's seat. The car sped off.

When viewed in the light most favorable to the trial court's judgment, Taylor's testimony was evidence from which the trial court could have reasonably

8

inferred that appellant had the intent to commit theft when he entered the residence. Courts evaluating the sufficiency of evidence in burglary cases have held similar evidence to be sufficient to show intent to commit theft.[2] *See, e.g.*, *Gear*, 340 S.W.3d at 747; *Ortega*, 626 S.W.2d at 749; *Stearn*, 571 S.W.2d at 177; *Cano v. State*, No. 13–11–00568–CR, 2012 WL 6061788, at \*6 (Tex. App.— Corpus Christi Dec. 6, 2012, no pet.) (mem. op., not designated for publication). We hold that the trial court did not abuse its discretion in revoking appellant's community supervision and adjudicating his guilt. *See Rickels*, 202 S.W.3d at 763–64.

We overrule appellant's first issue.

## Court Costs

In his second issue, appellant contends "there is no evidence in this case to support the assessment of court costs."

In its April 10, 2010 judgment, the trial court ordered appellant to pay court costs of $350.00. Appellant filed a notice of appeal. He filed a "designation of Clerk's Record" in which he included a request for "[t]he bill of costs reflecting all

---

[2] We note that appellant's testimony denying that he entered the residence with the intent to commit theft was given during the punishment phase, after the trial court had found to be true the State's allegation that appellant had violated the conditions of his community supervision by committing a new offense. Moreover, as the trier of fact, the trial court was the sole judge of the credibility of the witnesses and the weight to be given to their testimony. *See Canseco v. State*, 199 S.W.3d 437, 439 (Tex. App.—Houston [1st Dist.] 2006, pet. ref'd). Accordingly, the trial court was entitled to disbelieve appellant's testimony.

fees and costs assigned to Defendant post-conviction." The original clerk's record did not contain a bill of costs.

We ordered the district clerk's office to supplement the record with a bill of costs. That office filed a supplemental record containing a bill of costs. The bill reflected costs and fees totaling $204.[3] In *Cardenas v. State*, we held that it is appropriate for this Court to order the district clerk's office to supplement the clerk's record to include the bill of costs. *See* 01–11–01123–CR, 2013 WL 1164365, at *4–5 (Tex. App.—Houston [1st Dist.] Mar. 21, 2013, no pet. h.) (citing TEX. CODE CRIM. PROC. ANN. art. 103.006 (Vernon 2006); TEX. R. APP. P. 34.5, 44.3).

The district clerk's office filed a second supplemental clerk's record. The record contains an amended bill of costs. The amended bill provides that costs in this case total $219, rather than $204, as reflected in the earlier filed bill of costs. The second supplemental clerk's record also contains a judgment nunc pro tunc signed by the trial court on its own motion to correct the amount of costs assessed against appellant. The judgment nunc pro tunc, signed February 8, 2013, reflects a costs assessment of $219.

---

[3] The document contained in the supplemental record indicates that it is from the Harris County Clerk's Justice Information Management Systems, commonly referred to by its acronym "JIMS." The document, entitled "JIMS Cost Bill Assessment," itemizes the various costs assessed in appellant's case.

A nunc pro tunc judgment allows the trial court to correct the record when there is a discrepancy between the judgment as pronounced in court and the judgment reflected in the record. *Blanton v. State*, 369 S.W.3d 894, 897–98 (Tex. Crim. App. 2012). "Corrections to the record are limited to clerical errors and are not appropriate for errors involving judicial reasoning." *Id*. at 898.

Rule 23.1 of the Texas Rules of Appellate Procedure vests a trial court with the authority to correct clerical mistakes or errors in a judgment or order through entry of a nunc pro tunc judgment so long as the defendant has not appealed. *See* TEX. R. APP. P. 23.1; *State v. Bates*, 889 S.W.2d 306, 309 (Tex. Crim. App. 1994) (interpreting former rule of appellate procedure 36, predecessor to current rule 23.1). Rule of Appellate Procedure 25.2(g) provides, "Once the record has been filed in the appellate court, all further proceedings in the trial court—except as provided otherwise by law or by these rules—will be suspended until the trial court receives the appellate-court mandate." TEX. R. APP. P. 25.2(g); *see also Green v. State*, 906 S.W.2d 937, 939 (Tex. Crim. App. 1995) (interpreting former appellate rule 40(b)(2), predecessor to current rule 25.2). Thus, a trial court may not render a judgment nunc pro tunc after the appellate record is filed in the court of appeals. *See* TEX. R. APP. P. 25.2(g); *see also Green*, 906 S.W.2d at 939.

Here, the appellate record had already been filed in this Court when the nunc pro tunc judgment was signed on February 8, 2013. Accordingly, the trial court no

longer had jurisdiction to sign the nunc pro tunc judgment. *See* Tex. R. App. P. 25.2(g); *see also Green*, 906 S.W.2d at 939 (holding findings of fact and conclusions of law, entered after filing of appellate record, were void). Because the trial court lacked jurisdiction to sign the judgment nunc pro tunc to correct its judgment after the appellate record in this case was filed, we disregard the nunc pro tunc judgment contained in the supplemental clerk's record. We review the original judgment signed on April 10, 2012, assessing costs of $350.

A defendant convicted of a felony offense must pay certain statutorily mandated costs and fees, which vary depending on the type of offense, the underlying facts, and procedural history of the case. *See Owen v. State*, 352 S.W.3d 542, 546 n.5 (Tex. App.—Amarillo 2011, no pet.) (providing an extensive list of Texas statutes requiring convicted persons to pay costs and fees). The record demonstrates that appellant was convicted of the felony offense of possession of between one and four grams of cocaine in district court, supporting each of the following costs listed in the amended bill of costs:

- $40 "clerk's fee" (*See* Tex. Code Crim. Proc. Ann. art. 102.005(a) (Vernon 2006) ("A defendant convicted of an offense in . . . a district court shall pay for the services of the clerk of the court a fee of $40."));

- $133 "consolidated court costs" (*See* Tex. Loc. Gov't Code Ann. § 133.102(a)(1) (Vernon Supp. 2012) (entitled "Consolidated Fees on Conviction" and providing, "A person convicted of an offense shall pay as a court cost, in addition to all other costs . . . $133 on conviction of a felony. . . ."));

12

- $4 "jury reimbursement fee" (*See* TEX. CODE CRIM. PROC. ANN. art. 102.0045(a) (Vernon Supp. 2012) ("A person convicted of any offense, other than an offense relating to a pedestrian or the parking of a motor vehicle, shall pay as a court cost, in addition to all other costs, a fee of $4 to be used to reimburse counties for the cost of juror services as provided by Section 61.0015, Government Code."));

- $2 "support of [indigent] defense" (*See* TEX. LOC. GOV'T CODE ANN. § 133.107(a) (Vernon Supp. 2012) ("A person convicted of any offense, other than an offense relating to a pedestrian or the parking of a motor vehicle, shall pay as a court cost, in addition to other costs, a fee of $2 to be used to fund indigent defense representation through the fair defense account established under Section 79.031, Government Code."));

- $6 "support of judiciary fee" (*See id.* § 133.105(a) (Vernon 2008) ("A person convicted of any offense, other than an offense relating to a pedestrian or the parking of a motor vehicle, shall pay as a court cost, in addition to all other costs, a fee of $6 to be used for court-related purposes for the support of the judiciary."));

- $25 "DC records preservation" (*See* TEX. CODE CRIM. PROC. ANN. art. 102.005(f) ("A defendant convicted of an offense in a . . . district court shall pay a fee of $25 for records management and preservation services performed by the county as required by Chapter 203, Local Government Code."));

- $5 "security fee" (*See id.* art 102.017(a) (Vernon Supp. 2012) ("A defendant convicted of a felony offense in a district court shall pay a $5 security fee as a cost of court."));

- $60 "drug court program fee" (*See id.* art. 102.0178(a)(2) (Vernon Supp. 2012) ("In addition to other costs on conviction imposed by this chapter, a person shall pay $60 as a court cost on conviction of an offense punishable as a Class

B misdemeanor or any higher category of offense under Chapter 481, Health and Safety Code.")

The amended bill of costs also lists a sheriff's fee of $90. *See generally id.* art. 102.011 (listing fees for services of peace officers). Added together, the amended bill of costs reflects total costs of $365. However, the amended costs bill also reflects that appellant has previously paid $146 of these costs. Thus, the amended bill of costs supports an assessment of court costs in the amount of $219, but does not support the $350 costs assessment ordered in the judgment.

We have the power to modify an incorrect judgment to make the record speak the truth when we have the necessary information before us to do so. *See* TEX. R. APP. P. 43.2(b); *French v. State*, 830 S.W.2d 607, 609 (Tex. Crim. App. 1992). Accordingly, we overrule appellant's sole issue, but we modify the trial court's April 10, 2012 judgment to reflect an assessment of $219 in court costs. *See* TEX. R. APP. P. 43.2(b); *Bigley*, 865 S.W.2d at 27–28 (appellate court has authority to modify incorrect judgment when necessary information is available to do so).

## Conclusion

We affirm the judgment, as modified.

Laura Carter Higley
Justice

Panel consists of Chief Justice Radack and Justices Higley and Brown.

Do not publish. TEX. R. APP. P. 47.2(b).

15