# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

NO. 03-14-00682-CR

Peter Ezebunwa, Appellant

v.

The State of Texas, Appellee

FROM THE DISTRICT COURT OF TRAVIS COUNTY, 427TH JUDICIAL DISTRICT
NO. D-1-DC-10-206948, HONORABLE JIM CORONADO, JUDGE PRESIDING

## M E M O R A N D U M   O P I N I O N

Appellant pled guilty to possession of a controlled substance and was placed on deferred adjudication community supervision. *See* Tex. Health & Safety Code § 481.115(d); *see also* Tex. Code Crim. Proc. art. 42.12, § 5. Less than three years later,[1] he was adjudged guilty and sentenced to five years in prison. The trial court found that he violated a term of his community supervision by committing a subsequent criminal offense of possession of a controlled substance. On appeal, appellant challenges the sufficiency of the evidence to support this finding. We conclude that the evidence was sufficient. However, through our own review of the record, we have found

---

[1] During that time period, the State filed three motions to adjudicate, after which appellant was continued on deferred adjudication community supervision. Modifications to his terms and conditions included the SMART residential treatment program (after testing positive for marijuana), SAFPF (Substance Abuse Felony Punishment Facility), *see* Tex. Gov't Crim. Proc. art. 493.009, (after an unsuccessful discharge from the SMART residential treatment program), and Relapse SAFPF (after an unsuccessful discharge from the SAFPF aftercare transitional center).

non-reversible error in the judgment adjudicating guilt. We modify the judgment to correct the clerical error and affirm as modified.

## FACTUAL AND PROCEDURAL BACKGROUND

On November 1, 2011, appellant pled guilty to possession of a controlled substance, and the trial court placed appellant on four years' deferred adjudication community supervision. One of the terms of his community supervision was that appellant could not commit a subsequent criminal offense. On April 10, 2014, appellant was arrested for possession of a controlled substance and the State filed a motion to proceed with adjudication of guilt on several grounds, including the subsequent possession of a controlled substance offense. The trial court thereafter held a hearing on the motion to adjudicate.

The witnesses at the adjudication hearing included officers Joshua Euhus and Jeremy Bolin, the officers who were dispatched on the night of April 9, 2014, to investigate a complaint of drug activity in an alley. Officer Euhus testified that upon arriving at the scene, the complainant, whose home abuts the alley, described appellant as the "primary suspect" but that there were also other individuals selling drugs behind her home. The complainant identified appellant to the officers by the distinctive color of the jacket that he was wearing.[2] Officer Euhus further testified that he observed appellant, who matched the description given by the complainant, and he "appeared to be very nervous, shifting his weight and looking around for law enforcement." The officers made contact with appellant and three other individuals. Officer Euhus testified that he discovered a bag

---

[2] According to the testimony, appellant's jacket was a "green jacket with orange sleeves."

2

of cocaine underneath "recently constructed rock piles" where appellant had been standing,[3] and he knew from his experience that it was "very common" for drug dealers in that area to hide their drugs from the police by placing them under rocks where they were standing.

During their testimony, both officers conceded that they never saw appellant sell drugs. Officer Bolin, however, testified that: (i) the area where appellant was found was a "very, very high drug area in our part of town for a very, very long time"; (ii) the specific area was "notorious" for people dealing crack cocaine; (iii) the complainant observed the individuals dealing drugs, including the individual who matched appellant's description; and (iv) it was out of the ordinary for someone to stand in the "dark" alley for no apparent reason. Officer Bolin also found $740 in small denominations on appellant's person, and testimony indicated that large sums of money in small denominations are consistent with street level drug sales. Further, the evidence showed that the officers were dispatched to the alley around 11:00 p.m. and that none of the individuals, including appellant, lived in the residences adjacent to the alley.

## STANDARD OF REVIEW

We review the decision to adjudicate guilt in the same manner as a community supervision revocation in which an adjudication of guilt was not deferred. Tex. Code Crim. Proc. art. 42.12, § 5(b); *Leonard v. State*, 385 S.W.3d 570, 571 n.1 (Tex. Crim. App. 2012). A trial court's decision to revoke community supervision is reviewed for an abuse of the trial court's discretion. *Rickles v. State,* 202 S.W.3d 759, 763 (Tex. Crim. App. 2006). In a revocation hearing, the State

---

[3] Subsequent laboratory testing reflected the bag contained 8.07 grams of cocaine.

3

must prove by a preponderance of the evidence that a defendant violated the terms of his community supervision. *Moreno v. State*, 22 S.W.3d 482, 488 (Tex. Crim. App. 1999). "In other words, that greater weight of the credible evidence which would create a reasonable belief that the defendant has violated a condition of his probation." *Rickles*, 202 S.W.3d at 763. We consider the evidence presented at the hearing in the light most favorable to the trial court's findings. *Garrett v. State*, 619 S.W.2d 172, 174 (Tex. Crim. App. 1981).

## DISCUSSION

In his sole point of error, appellant contends there is insufficient evidence to show by a preponderance of the evidence that he had care, custody, and control of the cocaine, and thus the evidence is insufficient to show that he violated a term of his community supervision. *See* Tex. Health & Safety Code §§ 481.002(38) (defining possession as "actual care, custody, control, or management"), 481.115(d) (defining offense of possession of substance); *Evans v. State,* 202 S.W.3d 158, 161 (Tex. Crim. App. 2006) (noting that, to prove possession of controlled substance, evidence must show that (1) defendant exercised control, management, or care over substance and (2) defendant knew matter possessed was contraband).

Mere presence where a controlled substance is found is insufficient by itself to establish possession. *Evans,* 202 S.W.3d at 162; *Martin v. State*, 753 S.W.2d 384, 387 (Tex. Crim. App. 1988); *Meeks v. State*, 692 S.W.2d 504, 511 (Tex. Crim. App. 1985). However, presence and proximity when combined with other evidence, direct or circumstantial, may be sufficient to establish knowing possession. *See Evans*, 202 S.W.3d at 162. The evidence "must establish that [appellant's] connection with the drug was more than fortuitous." *Id.* Where, as here, "the accused

4

is not in exclusive possession of the place where the substance is found, it cannot be concluded that the accused had knowledge of and control over the contraband unless there are additional independent facts and circumstances which affirmatively link the accused to the contraband." *Poindexter v. State*, 153 S.W.3d 402, 406 (Tex. Crim. App. 2005) (quoting *Deshong v.* State, 625 S.W.2d 327, 329 (Tex. Crim. App. 1981)).

The Texas Court of Criminal Appeals has identified relevant factors that may, alone or in combination, link an accused to a substance to establish knowing possession:

> (1) the defendant's presence when a search is conducted; (2) whether the contraband was in plain view; (3) the defendant's proximity to and the accessibility of the narcotic; (4) whether the defendant was under the influence of narcotics when arrested; (5) whether the defendant possessed other contraband or narcotics when arrested; (6) whether the defendant made incriminating statements when arrested; (7) whether the defendant attempted to flee; (8) whether the defendant made furtive gestures; (9) whether there was an odor of contraband; (10) whether other contraband or drug paraphernalia were present; (11) whether the defendant owned or had the right to possess the place where the drugs were found; (12) whether the place where the drugs were found was enclosed; (13) whether the defendant was found with a large amount of cash; (14) and whether the conduct of the defendant indicated consciousness of guilt.

*Evans*, 202 S.W.3d at 162 n.12 (citing *Olivarez v. State*, 171 S.W.3d 283, 291 (Tex. App.—Houston [14th Dist.] 2005, no pet.)). These are some factors that may circumstantially establish the sufficiency of the evidence to prove a knowing possession; they are not a litmus test. *Id.*; *see also Allen v. State*, 249 S.W.3d 680, 692 n.13 (Tex. App.—Austin 2008, no pet.) (explaining that affirmative-link doctrine "is a judicially devised standard to aid appellate courts in determining the legal sufficiency of the evidence in knowing possession of contraband cases" but is not "a litmus test"). The number of links or factors is not dispositive. *Evans*, 202 S.W.3d at 162. Rather, we look

to "the logical force of all of the evidence." *Id.* "Each case must be examined on its own facts." *Roberson v. State*, 80 S.W.3d 730, 736 (Tex. App.—Houston [1st Dist.] 2002, pet. ref'd).

To support his position that the evidence is insufficient, appellant relies on the fact that a number of the above listed factors are lacking in this case. *See Evans*, 202 S.W.3d at 162. Appellant notes that he was never seen with the cocaine, did not appear to be under the influence of any substance, and that there was no smell of a substance noted. *See id.* Appellant further notes that there were other people around and that he never made any affirmative statement that would link him to the cocaine. However, the absence of the above factors is not evidence of appellant's innocence to be weighed against the evidence tending to connect appellant to the factors or links that are present. *See Hernandez v. State*, 538 S.W.2d 127, 131 (Tex. Crim. App. 1976). Moreover, in determining the sufficiency of evidence, we consider all the evidence before the trier of fact. *Poindexter*, 153 S.W.3d at 405.

Here, the officers testified that: (1) appellant was in close proximity to—and had ready access to—the cocaine; (2) appellant was present when the cocaine was found; and (3) appellant was found with a large amount of cash in small denominations. *See Evans*, 202 S.W.3d at 162 n.12 (listing among factors, proximity, presence, and possession of large amount of cash). Further, the complainant identified appellant to the officers upon their arrival at the scene by his clothing as one of the individuals selling drugs in her backyard, and the evidence showed that appellant did not live in the immediate area and that he was in the alley late at night with no apparent reason. Finally, Officer Bolin testified that the alley and surrounding area were "notorious" for drug dealing.

6

Appellant also relies on *Armstrong v. State*, 82 S.W.3d 444 (Tex. App.—Austin 2002, pet. ref'd), to support his argument that the evidence is insufficient. We find that case factually distinguishable. In that case, Armstrong, who was on community supervision for possession of cocaine, was involved in a car accident in which she was the driver of the vehicle. *Id.* at 446. Her three children and sister-in-law were passengers. *Id.* At the scene, the investigating officer observed the sister-in-law holding a purple bag. *Id*. Armstrong was later transported to the hospital. *Id.* At the hospital, the officer, after noting that Armstrong's sister-in-law was "still in possession of the bag," asked if he could look in the bag. Armstrong's sister-in-law consented, and the officer found a sack of cocaine in the bag amongst children's clothes. *Id.* However, Armstrong—not the sister-in-law—was arrested for possession of cocaine, and the State filed a motion to revoke her community supervision. *Id.* at 447–48. After Armstrong's revocation hearing, the trial court found that she violated her community supervision by intentionally or knowingly possessing cocaine with intent to deliver. *Id.* On appeal, this Court reversed the trial court's decision, finding the affirmative links too weak to support the trial court's finding that Armstrong violated her community supervision by intentionally and knowingly possessing the cocaine found in the bag in her sister-in-law's possession. *Id.* at 450.

In *Armstrong*, the only evidence linking Armstrong to the cocaine was an "unidentified" deputy's statement alleging that Armstrong was more interested in locating the bag than worrying about the children and her statement at the hospital that the bag was hers. *See id.* In contrast, as discussed above, the evidence here showed that appellant was found in close proximity to the cocaine, that he had a large amount of cash in small denominations on his person, he was

7

standing at or near where the cocaine was found (six to twelve inches away), and he did not live in the area and had no apparent reason for being in the alley late at night. Also, according to Officer Bolin's testimony, the alley and surrounding area were "notorious" for drug dealing, and the complainant witnessed the individuals—including appellant—"dealing drugs." Crediting this evidence, the trial court could have found by a preponderance of the evidence that appellant was in care, custody, and control of the cocaine located in his proximity. *See* Tex. Health & Safety Code § 481.002(38); *Evans*, 202 S.W.3d at 158.

Based upon our review of the evidence, in the light most favorable to the trial court's ruling, we conclude that the evidence was sufficient to support the trial court's finding that appellant violated his community supervision by committing a subsequent offense, and that the trial court did not abuse its discretion in revoking appellant's community supervision on this basis and proceeding to adjudicate guilt. We overrule appellant's sole point of error.

On review of the record, however, we observe that the judgment adjudicating guilt in this case contains a clerical error. Specifically, the judgment erroneously states that appellant's "Plea to Motion to Adjudicate" was "True" when the record of the adjudication hearing reflects that appellant entered pleas of "Not True" to the allegations contained in the motion to adjudicate. This Court has the authority to modify incorrect judgments when necessary information is available to do so. *See* Tex. R. App. P. 43.2(b); *Bigley v. State*, 865 S.W.2d 26, 27–28 (Tex. Crim. App. 1993). Accordingly, we modify the judgment adjudicating guilt to reflect that appellant's "Plea to Motion to Adjudicate" was "Not True."

8

**CONCLUSION**

Having overruled appellant's sole point of error, we modify the judgment as noted above to correct the clerical error and affirm the judgment adjudicating guilt as modified.

_____

Melissa Goodwin, Justice

Before Justices Puryear, Goodwin, and Bourland

Modified and, as Modified, Affirmed

Filed:   August 25, 2016

Do Not Publish